Ray CUMMINS, Plaintiff,

v.

CARTERET BROADCASTING COMPANY, Defendant.

Civ. No. 362.

United States District Court
E. D. North Carolina, New Bern Division.
Jan. 27, 1956.

548

Harvey Hamilton, Jr., Morehead City, N. C., LeRoy Scott, Washington, N. C., for plaintiff.

R. E. Whitehurst, New Bern, N. C., for defendant.

GILLIAM, District Judge.

The plaintiff and Walder Niemi instituted a joint action under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq., for recovery of unpaid minimum wages, liquidated damages, and attorneys' fees, as provided in the Act. The hearing was without a jury, and prior to call of the case Walder Niemi took a voluntary dismissal. The claim of plaintiff Cummins, as set forth in the complaint, covered the period from the week ending November 5, 1949, through the week ending June 19, 1952, but at the hearing plaintiff, through counsel, conceded that all items prior to July 7 or the week ending July 15, 1950, are barred by the two-year statute of limitations. While in its answer defendant denied it was subject to the Act, at the hearing and in its brief filed it was admitted that it is subject thereto; and in its brief counsel sets forth that the only questions involved are: 1. Was he (Cummins) employed in a bona fide executive, administrative or professional capacity so as to exempt him from the provisions of the Fair Labor Standards Act; and 2. If he was not exempt, what amount of overtime work did he perform.

Plaintiff began work for defendant as engineer in January, 1947; he was the only engineer during the period when the equipment was installed and the station set up; prior to the start of broadcasting a second engineer was employed; but from May, 1948 to September, 1950, plaintiff had no assistant or associate;

however, from September, 1950, through June 19, 1952, plaintiff served as Chief Engineer and Walder Niemi as his assistant.

During the entire period involved, plaintiff was paid a weekly salary of $85, and in addition received varying amounts as talent fees, which are fees paid to the particular announcer who "puts on" the program. These fees were paid by advertising sponsors to plaintiff through defendant. Plaintiff was responsible for the technical operation of the equipment, made repairs, made required F.C.C. checks, acted as Program Director, and, though not employed to do so, was permitted to engage in sports announcing; he did other announcing, ran musical programs, acted as disc jockey, put news in the machine, edited news, read it on the air, assisted in putting on programs, set up meetings and clubs, attended baseball meetings as sports announcer for the station, and performed other services outside his duties as Chief Engineer and not ordinarily performed by an engineer. Such outside services occupied him for more than half the time when he was actually on duty. He was a "combination man" such as may be found at most radio stations. There were no employees under his control and he had no right to either hire or fire. Plaintiff owned 5½ percent of the outstanding stock of the defendant corporation. The corporation was set up by the Wage and Hour Commission on a forty-eight hour work week and continued on such basis during the entire period with which we are dealing.

The defendant insists that the plaintiff was an exempt employee under the provisions of Sec. 213, Title 29, which, insofar as pertinent, is as follows:

"(a) The provisions of sections 206 and 207 * * * shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional * * * capacity * *."

The Administrator of the Wage and Hour Law, to whom is delegated the duty of defining the terms of the Act, had adopted and promulgated the following interpretations of the meaning of the words "employee employed in a bona fide executive, administrative, professional * * * capacity."

29 U.S.C.A. Appendix, § 541.1: "The term 'employee employed in a bona fide executive * * * capacity' * * * shall mean any employee:

"(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

"(b) Who customarily and regularly directs the work of two or more other employees therein; and

"(c) Who has the authority to hire or fire other employees, or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

"(d) Who customarily and regularly exercises discretionary powers; and

"(e) Who does not devote more than 20 percent of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section * * *; and

(f) Who is compensated for his services on a salary basis at a rate of not less than $55 per week * * *."

§ 541.2 "The term 'employee employed in a bona fide * * * administrative * * * capacity' * * * shall mean any employee:

"(a) Whose primary duty consists of the performance of office or non-manual field work directly related to management policies or general business operations of his employer or his employer's customers; and

"(b) Who customarily and regularly exercises discretion and independent judgment; and

"(c) (1) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or admin-

**550**

istrative capacity * * * or (2) who performs under only general supervision work along specialized or technical lines requiring special training, experience or knowledge, or (3) who executes under only general supervision special assignments and tasks; and

"(d) Who does not devote more than 20 percent of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; and

"(e) Who is compensated for his services on a salary or fee basis at a rate of not less than $75 per week * * *."

§ 541.3 "The term 'employee employed in a bona fide * * * professional * * * capacity' * * * shall mean any employee:

"(a) Whose primary duty consists of the performance of work:

"(1) Requiring knowledge of an advanced type in a field of science or learning * * * or

"(2) Original and creative in character in a recognized field of artistic endeavor * * * and

"(b) Whose work requires the consistent exercise of discretion and judgment in its performance; and

"(c) Whose work is predominantly intellectual and varied in character * * and

"(d) Who does not devote more than 20 percent of his hours worked in the workweek to activities which are not an essential part of and necessarily incident to the work described in paragraphs (a) through (c) of this section; and

"(e) Who is compensated for his services on a salary or fee basis at a rate of not less than $75 per week * * *."

■ These interpretations under the decisions have the force and effect of law. The lettered subdivisions in each of the three interpretations are in the conjunctive and the cases hold that where a claim is made by an employer that a particular employee is exempt as an executive, administrative or professional employee, he has the burden of showing that such employee fulfills each and every condition set out. Walling v. General Industries, 330 U.S. 545, 67 S. Ct. 883, 91 L.Ed. 1088; Helliwell v. Haberman, 2 Cir., 140 F.2d 833; Walling v. Yeakley, 10 Cir., 140 F.2d 830. It is also held that the Act must be liberally construed and the exemptive provisions narrowed. Western Union v. McComb, 6 Cir., 165 F.2d 65.

■ While plaintiff's activities were such as to fulfill some of the conditions prescribed for an executive employee, and for an administrative employee, and for a professional employee, as I view it, the evidence does not demonstrate that all required conditions are fulfilled as to any one of the three classes. This conclusion, to my mind, is inescapable and clear. I will not go into great detail.

Other considerations aside, plaintiff was not an executive employee, as he could not hire or fire, and much more than 20 percent of the time worked was devoted to duties not ordinarily performed by an engineer, non-exempt work.

He could not be classed as an administrative employee, as his primary duty did not consist of the performance of office or non-manual field work directly related to management policies or general business operations of his employer or his employer's customers. Besides, the evidence shows that he devoted much more than 20 percent of his time in performance of duties of a non-exempt nature.

It was my impression at the hearing that defendant's counsel did not seriously contend that plaintiff was a professional employee. However this may be, I think it obvious that he cannot be so classified under the Director's Interpretations. I will not elaborate.

The remaining question—what amount of overtime work did plaintiff perform—is difficult. No records were kept by either the employer or the employee. Obviously, the transmitter logs partially

relied on by plaintiff are not helpful for, although they purport to show that plaintiff was on duty at the end of each thirty minute period while the station was on the air, it was conceded that frequently the log was entered either in advance or subsequent to the time indicated. They mean nothing; nor does the evidence of Grover Munden, President and General Manager of defendant corporation, and other defendant witnesses, afford any basis for determining the amount of overtime for which plaintiff should be paid. The statements are general and, while they are to the effect that plaintiff's claim is extravagant and absurd, the defendant doesn't even attempt to give an estimate of the hours of overtime made. It is clear, however, that plaintiff is entitled to some pay for overtime; this is not denied. Mr. Munden testified: "As a wild guess, I would say he averaged 45 hours a week."

█ Title 29, § 211(c) reads: "Every employer subject to any provision of sections 201–219 * * * shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, * * *." And where the employer fails in this respect, in an action such as this, it seems, the employee does not have as heavy burden in proving his damage as would ordinarily be the case. In Handler v. Thrasher, 10 Cir., 191 F. 2d 120, at page 122 the opinion contains these statements: "It is incumbent upon the employee to show by a fair preponderance of the evidence not only that he worked in excess of the statutory work week, but the actual number of hours worked in excess thereof. But, where he proves that he has in fact performed work for which he has not been compensated, and produces evidence to show the amount and extent of that work, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed, or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the Court may then award compensation to the appellee (employee), even though the result be only approximate. * * * By the very nature of appellee's employment * * * he was required to do whatever work necessary to pump the wells, and the performance of this work required him to be on duty varying hours for seven days a week. * * * Armour & Company v. Wantock, 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118. 'Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged. * * * "Hours worked are not limited to the time spent in active labor but include time given by the employee to the employer." ' "

█ In attempting to approximate the amount of overtime due plaintiff, I think that the period should be narrowed to cover the period from the week ending July 15, 1950, to the week ending October 22, 1951, since proper overtime was paid after November 24, 1951, and no claim is made for the weeks intervening between the week ending October 22, 1951, and November 24, 1951. It is true that plaintiff is contending that the amounts paid for overtime after November 24 were not the proper amounts, since the amounts received for talent fees were not included in calculating the hourly rate of pay. It is my opinion that such fees should not be included. They were not paid by defendant to plaintiff as compensation, but by others, through the defendant, for services to such other parties. There was no direct profit to the defendant. No case has come to my attention dealing with the question, but it does not seem logical, when computing what defendant paid plaintiff by the hour, to include what others paid to him for services to them. I so hold.

The defendant station during the months was operating seven days to the week and was limited in time of broadcasting from sun to sun.

█ Following is a tabulation showing the overtime made by plaintiff during the weeks involved and a calculation of the amount due him for unpaid overtime compensation during those weeks. The contention that plaintiff should be debited for those weeks in which he worked less than 48 hours, inasmuch as

he was paid for 48 hours, is rejected. The business was set up on a 48-hour basis, but this does not mean, and, under the law, cannot mean that the plaintiff is not entitled to time and a half for each hour over 40 hours worked in any one week. The plaintiff was paid, it is true, for the hours worked over 40 hours, but less than 48 hours, but he was entitled to time and a half for these hours. Therefore, he is still entitled to receive one-half time for such hours. In addition, as he was paid nothing for the hours over 48, he is now entitled to time and a half for these hours. Plaintiff received a salary of $85 for a 48-hour week, meaning an hourly rate of $1.77. This hourly rate is used in the calculation to figure both the amount due for the hours worked over 40 and less than 48, and also the hours worked over 48 during each week.

Tabulation of overtime and calculation of amount due plaintiff for certain weeks between week beginning July 7, 1950, and week beginning October 22, 1951:

| Week | Hours Worked | ½ Hourly Rate for Hours Between 40 and 48 | 1½ Hourly Rate for Excess of 48 Hours | Total |
|------|--------------|--------------|--------------|-------|
| 7/15/50 | 94 hrs. 45 min. | 7.08 | 124.08 | 131.16 |
| 7/22/50 | 94 hrs. 45 min. | 7.08 | 124.08 | 131.16 |
| 7/29/50 | 94 hrs. 45 min. | 7.08 | 124.08 | 131.16 |
| 8/ 5/50 | 92 hrs. 15 min. | 7.08 | 117.44 | 124.52 |
| 8/12/50 | 91 hrs. 40 min. | 7.08 | 115.88 | 122.96 |
| 8/19/50 | 93 hrs. | 7.08 | 119.44 | 126.52 |
| 8/26/50 | 93 hrs. | 7.08 | 119.44 | 126.52 |
| 9/ 2/50 | 89 hrs. 20 min. | 7.08 | 83.14 | 90.22 |
| 9/ 9/50 | 91 hrs. 25 min. | 7.08 | 115.79 | 122.87 |
| 9/16/50 | 86 hrs. 15 min. | 7.08 | 101.51 | 108.59 |
| 9/23/50 | 86 hrs. 15 min. | 7.08 | 101.51 | 108.59 |
| 9/30/50 | 86 hrs. 15 min. | 7.08 | 101.51 | 108.59 |
| 10/ 7/50 | 44 hrs. 45 min. | 4.20 | | 4.20 |
| 10/14/50 | 44 hrs. 10 min. | 3.69 | | 3.69 |
| 10/21/50 | 41 hrs. 30 min. | 1.33 | | 1.33 |
| 10/28/50 | 41 hrs. 45 min. | 1.55 | | 1.55 |
| 11/ 4/50 | 41 hrs. | .88 | | .88 |
| 12/ 2/50 | 41 hrs. 45 min. | 1.55 | | 1.55 |
| 12/ 9/50 | 40 hrs. 55 min. | .81 | | .81 |
| 12/16/50 | 40 hrs. 30 min. | .44 | | .44 |
| 12/23/50 | 41 hrs. 45 min. | 1.55 | | 1.55 |
| 1/13/51 | 43 hrs. 15 min. | 2.88 | | 2.88 |
| 2/ 3/51 | 40 hrs. 15 min. | .22 | | .22 |
| 2/10/51 | 40 hrs. 25 min. | .37 | | .37 |
| 2/24/51 | 46 hrs. 45 min. | 5.97 | | 5.97 |
| 3/ 3/51 | 42 hrs. 25 min. | 2.14 | | 2.14 |
| 3/10/51 | 46 hrs. 30 min. | 5.75 | | 5.75 |
| 3/17/51 | 46 hrs. 30 min. | 5.75 | | 5.75 |
| 3/24/51 | 46 hrs. 30 min. | 5.75 | | 5.75 |
| 4/ 7/51 | 47 hrs. 45 min. | 6.86 | | 6.86 |
| 4/14/51 | 48 hrs. 20 min. | 7.37 | | 7.37 |
| 4/21/51 | 47 hrs. 30 min. | 6.64 | | 6.64 |
| 4/28/51 | 55 hrs. 45 min. | 27.67 | | 27.67 |
| 5/ 5/51 | 48 hrs. 30 min. | 8.37 | | 8.37 |
| 5/12/51 | 47 hrs. 52 min. | 6.97 | | 6.97 |

| Week | Hours Worked | ½ Hourly Rate for Hours Between 40 and 48 | 1½ Hourly Rate for Excess of 48 Hours | Total |
|---|---|---|---|---|
| 5/19/51 | 50 hrs. 30 min. | 13.68 | | 13.68 |
| 5/26/51 | 48 hrs. 30 min. | 8.37 | | 8.37 |
| 6/ 2/51 | 48 hrs. 45 min. | 9.03 | | 9.03 |
| 6/ 9/51 | 48 hrs. 15 min. | 7.70 | | 7.70 |
| 6/16/51 | 43 hrs. 45 min. | 3.32 | | 3.32 |
| 6/23/51 | 43 hrs. 45 min. | 3.32 | | 3.32 |
| 6/30/51 | 44 hrs. 15 min. | 3.76 | | 3.76 |
| 7/ 7/51 | 42 hrs. 45 min. | 2.43 | | 2.43 |
| 7/14/51 | 45 hrs. 30 min. | 4.87 | | 4.87 |
| 7/21/51 | 44 hrs. 10 min. | 3.69 | | 3.69 |
| 7/28/51 | 43 hrs. 30 min. | 3.10 | | 3.10 |
| 8/ 4/51 | 43 hrs. 45 min. | 3.32 | | 3.32 |
| 8/11/51 | 44 hrs. 15 min. | 3.76 | | 3.76 |
| 8/18/51 | 44 hrs. | 3.54 | | 3.54 |
| 8/25/51 | 43 hrs. 45 min. | 3.32 | | 3.32 |
| 9/ 1/51 | 43 hrs. 45 min. | 3.32 | | 3.32 |
| 9/22/51 | 42 hrs. 30 min. | 2.21 | | 2.21 |
| 10/ 6/51 | 41 hrs. 15 min. | 1.11 | | 1.11 |
| 10/22/51 | 41 hrs. | .88 | | .88 |
| | | | Grand Total | 1,626.30 |

From the above calculation I find that the plaintiff is entitled to recover of defendant $1,626.30, representing unpaid overtime compensation, and $1,626.30 as liquidated damages to which he is entitled under Section 216 of the Act.

Under Section 216 of the Act the plaintiff is also entitled to recover counsel fees. I have fixed this amount at $750.

Judgment accordingly, with costs, will be entered.