John H. HAMMONDS, and Robert Phillips, Plaintiffs,

v.

J. W. BROOM & SONS, Defendants.

Civ. A. Nos. 1455, 1456.

United States District Court
W. D. North Carolina,
Charlotte Division.

June 29, 1961.

Kennedy, Covington, Lobdell & Hickman, Charlotte, N. C., Bailey Patrick, Jr., and Clarence W. Walker, Charlotte, N. C., for plaintiffs.

William W. Sturges, Charlotte, N. C., for defendants.

WARLICK, Chief Judge.

These are related cases and pursuant to agreement of the parties were consolidated for trial, with the further understanding that individual judgments would be rendered. They are actions instituted by the plaintiffs to recover unpaid minimum wages and unpaid overtime compensation, together with reasonable attorneys' fees and costs of the action, under the provisions of the Fair Labor Standards Act of 1938, as amended. 29 U.S.C.A. § 201 et seq. Jurisdiction is conferred by Section 16(b) of the Act and by 28 U.S.C.A. § 1337.

The complaints originally sought relief for the periods from January 3, 1957 to January 3, 1959; however as each complaint was filed on August 3, 1959, it was adjudged prior to trial, upon motion of the defendants, that any amounts sought for the period prior to August 3, 1957, were barred by the two-year statute of limitations contained in Section 6 of the Portal-to-Portal Pay Act. 29 U.S. C.A. § 255. At the trial it was also stipulated that plaintiff John H. Hammonds was not entitled to overtime compensation as he was an employee who came within the meaning of Section 13(b) (1) of the Act over whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 304 of Title 49.

The defendants admit that during the seventeen months' period involved both the plaintiffs were, from time to time, engaged in interstate commerce or production of goods for commerce as required by Sections 6 and 7 of the Act; however, as to which particular work weeks they were so employed, and as to which they were not, the parties are in dispute. As a defense to the actions of the defendants also contend that their

business operation was exempt from coverage under the Act by the "retail exemption provision" 29 U.S.C.A. § 213 (a) (2). An additional defense of "good-faith" was withdrawn during course of the trial.

After the submission of briefs on behalf of both parties and a careful consideration thereof, the following findings of fact and conclusions of law are made and separately stated.

### Findings of Fact.

The defendants are partners having their place of business in the City of Monroe, North Carolina, where they were engaged in the following businesses during the period involved in these actions: (1) the operation of a retail grocery store; (2) the operation of a cotton gin; (3) the operation of a feed mill which included the grinding and mixing of feed, the purchase and sale of fertilizer, and an indeterminable amount of processing and manufacturing of corn meal; and (4) the raising of chickens and hogs. All of the defendants' various business ventures were carried on at one site in the City of Monroe, except that the chickens and hogs were raised by farmers throughout the area.

The defendants' grocery store and feed mill were located in the same building but were separated by a partition, which required one going from the grocery store to go out of doors and enter another door to the feed mill. The cotton gin was located in a contiguous building and adjoining shed. There was a frequent interchange of employees between the gin and the feed mill, but both plaintiffs testified that neither had worked in the grocery store.

During the calendar year 1957 the defendants' gross sales were $194,610.34, broken down as follows:

| | |
|---|---|
| Groceries | $ 21,240.46 |
| Feed and Fertilizer Store | 128,657.16 |
| Ginning | 5,396.84 |
| Cotton Seed | 13,185.68 |
| Chickens | 26,130.20 |

During the calendar year 1958 the defendants' gross sales were $202,532.15, broken down as follows:

| | |
|---|---|
| Groceries | $ 23,479.64 |
| Feed and Fertilizer Store | 118,434.88 |
| Ginning | 4,098.11 |
| Cotton Seed | 8,735.45 |
| Chickens and hogs | 47,784.07 |

The defendants did not maintain separate books for any of their operations except that receipts of the grocery store were separately recorded. Also, cotton ginning books were maintained as required by the United States Department of Agriculture, and memorandum accounts were kept for the livestock business. No separate account showed the feed and fertilizer mill sales. This amount was ascertained by subtraction from defendants' gross sales (as determined from its bank deposits) the amounts constituting the grocery sales, the cotton ginning sales, the cotton seed sales and the chicken and hog sales, and any other business transacted.

The defendants' method of raising chickens in 1957 and chickens and hogs in 1958 was done in this manner. Defendants purchased the animals, and agreed with various farmers in the area that they would furnish feed if the farmers provided the facilities, water and labor. When of marketable size, the animals were sold, the farmer being paid 2¢ per pound for his services, with the balance going to the defendants. At its cotton gin, the defendants ginned cotton on a set charge basis, buying the seeds derived therefrom on occasion and selling them to oil refineries, and delivering the cotton to be ginned to the growers.

Plaintiff Robert Phillips was employed by the defendants during the period from August 3, 1957 to January 3, 1959, in connection with the defendants' cotton gin and feed mill. He testified that during ginning season, from September to December each year, most of his work was around the gin assisting in its operation, loading cotton seed on trucks destined for oil refineries in North and

South Carolina, and when the gin was not operating, he worked in the feed mill. During the remainder of the year he worked in the feed mill with duties of assisting in grinding, mixing, and bagging feed, unloading trucks which brought shipments of corn, corn shucks, feed, feed supplements and fertilizer and other goods from points in North Carolina, South Carolina and Virginia, loading trucks, and occasionally unloading freight cars containing shipments consigned to the defendants. He further testified that he worked 60 hours a week (10 hours a day, 6 days a week) at a rate of $50 per week; that when he worked either more or less than 60 hours his pay was proportionately higher or lower than $50. He admitted that during the summer months, the defendants' business was closed on Wednesdays at 12:00 noon; that during the period in question he was laid off for a period of about three weeks, and that in some several weeks he worked less than 60 hours because of holidays which fell during those weeks.

Phillips seeks the amount of $657.98 as unpaid minimum wages together with liquidated damages in an equal amount; unpaid overtime compensation in the amount of $620, together with liquidated damages in an equal amount. These figures according to his evidence, were arrived at by computing $50 for a 60 hour week to equal 83.3 cents per hour, and then taking into consideration Christmas and other holidays, lay-offs, and Wednesday afternoons during the summer months.

Plaintiff John H. Hammonds was also employed by the defendants during the period from August 3, 1957 to January 3, 1959, primarily as a truck driver though he also worked in the feed mill. In the course of his duties he made regular trips to Portsmouth, Virginia, and to points in South Carolina, and occasionally assisted in unloading railroad cars. He testified that he worked 60 hours a week for $50; that in many weeks he worked in excess of 60 hours. As to whether closing at 12:00 noon on Wednesdays in the summer months affected him, he stated that on most such times he was out on the road in the truck, and did not return to Monroe until later in the day. He worked during every one of the 73 weeks contained in the period in controversy, but he did admit that on certain weeks, holidays, such as Christmas and Thanksgiving prevented him from making a full 60 hour week. He seeks $721.-44 as unpaid minimum wages, together with liquidated damages in an equal amount. This figure was arrived at by the same computation as was used in the case of Robert Phillips. As already stipulated, Hammonds is not entitled to any consideration for his overtime work.

■ The initial question to be considered is whether the plaintiffs fall within the coverage of the Act, i. e., whether or not they were "engaged in commerce or in the production of goods for commerce". The Supreme Court has stated that the test is "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 429, 75 S.Ct. 860, 862, 99 L.Ed. 1196. Though an employer may contend, as defendants have here, that the activities are essentially local in nature, Congress, in passing the Act, deemed the activities of the individual employees, not those of the employer, the controlling factor in determining the proper application of the Act. Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed. 2d 243.

■ The purpose of the Act being to extend Federal control in this field through the farthest reaches of the channels of interstate commerce (Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460).

■ I therefore conclude that both of these plaintiffs were engaged in commerce and the production of goods therefor. Both testified to having unloaded freight cars and trucks which had been in interstate commerce, and Hammonds tes-

tified to having driven a truck in interstate commerce throughout the period involved. Also, cotton, cotton seed, and relatively small amounts of corn meal admittedly manufactured by the defendants were commodities which subsequently were to flow into interstate commerce, and in that regard it has been held sufficient that the employee be employed in an occupation which is necessary to the production of a part of any other "articles or subjects of commerce of any character" which are produced for trade, commerce or transportation among the several states. Roland Electric Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 415, 90 L.Ed. 383, 386.

■ The most important issue for determination is whether the retail exemption provided in Section 13(a) (2) of the Act is applicable to these defendants. The tests for coverage of an employee under the Act and retail exemption for the employer are separate and distinct. Sections 6 and 7 provide that in order for an employee to be covered by the Act, he must be engaged in work in interstate commerce or in the production of goods for commerce during any workweek whereas in order for an employer to claim the retail exemption three tests must be met: 29 U.S.C.A. § 213(a) (2).

1. More than one half of the annual dollar volume of sales of goods or services must be made within the state in which the establishment is located.

2. At least 75% of the gross volume of sales of goods or services must not be for resale.

3. At least 75% of sales of goods or services must be recognized as retail sales or services in the industry.

These exceptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit. The three conditions of 13(a) (2) are explicit prerequisites to exemption not merely suggested guidelines for judicial determination of the employer's status. Mitchell v. Kentucky Finance Co., 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815; Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393.

■ Before computation of the annual dollar volume of sales of goods and services to determine if 75% of defendants' sales were recognized as retail and were not for resale, the court must first determine what constitutes the "establishment" referred to in Section 13(a) (2). The term "establishment", as used in 13 (a) (2), has been defined as a distinct, physical place of business, and is not to be construed as synonymous with the words "business" or "enterprise" as applied to multi-unit companies. A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095; Mitchell v. Bekins Van & Storage Co., 352 U.S. 1027, 77 S.Ct. 593, 1 L.Ed.2d 589; Interpretative Bulletin of the C.F.R., 779.3(b). The defendants contend that their establishment consists of the grocery store, feed mill, and cotton gin, all located at 918 S. Haynes Street in Monroe; that the chickens and hogs owned by defendants and raised on farms in the county were raised at one or more additional establishments. Defendants concede that if the gross sales derived from the chicken and hog sales be included in computation of the establishment's sales that it had failed to meet the requisites of the 13(a) (2) exemption.

■ The Court is of the opinion that all of defendants' sales, including those of chickens and hogs, must be considered for the purpose of determining the 13(a) (2) exemption, and that therefore, it is not entitled to the retail exemption as it has failed to satisfy the requirements therefor. Arnold v. Ben Kanowsky, Inc. supra. The evidence showed that the chicken and hog business was carried on from 918 S. Haynes Street, that title to the animals remained in the defendants, and that negotiations for sale thereof were carried on by defendants. The farmers were paid 2¢ per pound from the proceeds after sale to poultry and hog processors. The defendants furnished all the feed from their own feed mill and J. W. Broom, Jr., kept the books for the

entire operation in his office at 918 South Haynes Street.

■ All the cases cited in support of defendants' contention involved the ownership or leasehold of two or more business units such as retail chain stores, separate warehouses, or combinations of the two. A. H. Phillips, Inc. v. Walling, supra; Mitchell v. Bekins Van & Storage Co., supra; Mitchell v. Birkett, 8 Cir., 286 F.2d 474; McComb v. Wyandotte Furniture Store, 8 Cir., 169 F.2d 766; Mitchell v. Miller Drugs, Inc., 1 Cir., 255 F.2d 574. None could be a precedent in this case however as defendants have but one place of business from which the entire business was operated and they merely contracted with farmers to raise the livestock elsewhere as such would be impractical in the City of Monroe. Defendants neither owned nor controlled any separate "establishments" other than their place of business in Monroe. The gross receipts from the sale of chickens and hogs must be included in the establishment's sales and defendants have failed to establish a 13(a) (2) exemption since the retail sales are below the 75% required by the exemption.

■ Section 7(c) of the Act, an additional exemption sought as against plaintiff Phillips only, provides:

> "In the case of an employer engaged in * * * the ginning and compressing of cotton, or in the processing of cotton seeds * * * the provisions of subsection (a) shall not apply to any of his employees in any place of business where he is so engaged."

This exemption is not applicable in the case at bar as the court finds that all of the business carried on at 918 South Haynes Street comprised one establishment, and according to Phillips' testimony he worked not only at the gin during ginning season, but also in the mill. The time spent engaged in exempt and non-exempt work cannot be segregated, and workers performing both exempt and non-exempt work are entitled to the minimum wage and overtime for all work performed. McComb v. Del Valle, D.C.,

80 F.Supp. 945; Waialua Agricultural Co. v. Ciraco Maneja, D.C., 77 F.Supp. 480; North Shore Corp. v. Barnett, 5 Cir., 143 F.2d 172.

■ The sole remaining issue is what amounts the plaintiffs are entitled to as unpaid minimum wages and unpaid overtime compensation as required by Sections 6 and 7 of the Act. Defendants assert that the unsupported testimony of the plaintiffs is "pure contention", that the number of hours they worked and the amounts they were paid have not been shown as a matter of just and reasonable inference upon which to base a verdict. This objection is fully answered in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515, wherein the Court said:

> "Due regard must be given to the fact that it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours, and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof.
>
> "* * * In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even

though the result be only approximate. * * *

"The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of 11(c) of the Act."

 Both of the plaintiffs testified that they could neither read nor write; therefore, it was impossible for them to have compiled accurate written records, and the fact that defendants kept none reduced their burden of proving damages. Cummins v. Carteret Broadcasting Co., 137 F.Supp. 547. The plaintiffs testified that generally throughout the period they worked a 60 hour week except for several exceptions which were brought out on cross-examination; however, defendants' rebuttal failed to wholly disprove their testimony other than as to the exceptions such as holidays, lay-offs, Wednesday afternoons and at such other times as the evidence shows that some or all of the various business activities of the defendants were not in operation.

This has been a rather difficult case to determine. The business enterprises operated by the defendants are in a sense, a carry over from the old school and much of their line of endeavor was done in a way reminiscent of a passing age. The two plaintiffs have been in the employment of the defendants for quite a period of time. Each appeared to have been satisfied with his scale of pay until circumstances seem to have been altered, —then evidently these actions were prompted.

In order to properly decide the issue of recovery one must of necessity read between the lines, in that neither the evidence for the plaintiffs nor that of the defendants gives out other than a suggestion, a contention, and a bit of fact. Using all of the yardsticks thus far laid out in the various decisions, and undertaking to justly decide, I authorize judgment to be entered, based on the following:

### Conclusions of Law.

The Court has jurisdiction of the parties and the subject matter of this action. 28 U.S.C.A. § 1337, 29 U.S.C.A. § 216(b).

Both the plaintiffs and the defendants are within the coverage of the Fair Labor Standards Act of 1938, as amended.

Plaintiff Robert Phillips is entitled to recover of and from the defendants, under Section 6 of the Act the amount of $365 as unpaid minimum wages together with liquidated damages in an equal amount. He is further entitled to recover of and from the defendants under Section 7 of the Act the amount of $305 as unpaid overtime compensation together with liquidated damages in an equal amount.

Plaintiff John H. Hammonds is entitled to recover of and from the defendants under Section 6 of the Act the amount of $495 as unpaid minimum wages together with liquidated damages in an equal amount.

Each plaintiff is entitled to recover of and from the defendants a reasonable attorney's fee, in the amount of $175 as is required by the Act, a total of $350 in both of the consolidated cases determined herein. Plaintiffs are also entitled to have the costs of this action taxed against the defendants.

Counsel will submit decree.