

**Decided October 5, 1981**

IN THE DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

ANITA HERNANDEZ CARILLO,    )    CIVIL ACTION NO. 81-0010
                      )
           Plaintiff,)
                      )
      vs.           )    FINDINGS OF FACT AND
                      )    CONCLUSIONS OF LAW
MAXIMA C. ARRIOLA,      )
                      )
          Defendant.)
                      )

This cause was tried on August 24 and 27, 1981. The matter was taken under advisement pending submission of written arguments by counsel. After carefully considering the record and arguments, the Court upon a preponderance of the evidence, makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

1. Plaintiff Anita H. Carillo, a citizen of the Philippines, was hired by defendant, Maxima C. Arriola, of Saipan, Northern Mariana Islands, to work as a live-in housemaid.

2. Their agreement (plaintiff Exhibit 1) dated February 13, 1979 provided, among other things, for payment of $110.00 wages per month payable biweekly; that payment of overtime would be at the rate of time and one-half working hours "as required by law"; that it was a 12 month term of employment; that living quarters would be provided at no cost to the employee; that employer

196

would pay for cost of transportation for employee to return to Manila, P.I.; and that costs of hospitalization and medical expenses were to be borne by employer.

3. Defendant did in fact pay plaintiff $125.00 per month at the end of each month for the first 8-1/2 months and $110.00 per month for the months of November, December 1979 and January 1980.

4. Defendant owned a family-store operation which daily grossed an average of $250.00 - $300.00. This store was adjacent to and was a part of the house of the defendant.

5. Living in the home of defendant were defendant, her 4 children whose ages were 9, 7, 5 and 2 respectively, the plaintiff and defendant's common-law husband, Angel Ocampo. The three older children attended school while the youngest stayed at home.

6. Plaintiff did perform the duties of a housemaid such as cooking, laundering, housecleaning, baby sitting, etc.

7. In addition to housemaid duties, plaintiff did perform other work connected with the operation of the store including opening the store at 7:00 a.m. and closing at 10:00 p.m.; waiting on customers; purchasing merchandise as needed; restocking shelves; counting cash receipts at the close of business; etc.

8. Defendant insists that she told plaintiff not to do any work in connection with the store but believed also that since plaintiff lived-in and was considered a member

of her family that it was all right to allow her to work in the family store. Plaintiff claims that she was instructed by defendant to attend to the store. Working in the store provided plaintiff diversion from domestic duties and an opportunity to meet her boyfriend who became a frequent customer-visitor at the store.

The Court finds, however, that there is substantial evidence to show that on many occasions defendant did instruct plaintiff to take care of customers in the store.

9. In any event, plaintiff's presence in the store and performance of work as found in Number 7, above, were not without defendant's knowledge. Defendant did allow plaintiff to operate the store during her absence from home and to help in the store on those occasions when she was at home during this period of employment.

10. Defendant's claim that she and her children did most of the work in the store when it was open for business and which remained closed during her absence, belies this Court's finding that the store grossed an average $250 - $300 per day.

11. Defendant also owned a business known as Island Trading and in September 1979, she started Max's Beauty Parlor. These two businesses took her away from operation of the store during the better part of the day.

12. Defendant's common-law husband attempted to show that he did assist defendant in operating the store during her absences. This is difficult to accept in view of his work at Island Trading and contract with the Micronesian Telecommunications Corporation.

13. Plaintiff's work day generally ran from 6:00 a.m. to 10:00 p.m. and with time off for meals, the plaintiff performed ordinarily nine (9) hours of work per day in the store and five (5) hours per day as a housemaid.

14. The plaintiff's work week was 6 days a week during the one-year period of her employment.

15. Plaintiff was unable to work because of pregnancy for a period of 5 to 15 days.

16. Defendant did have possession of plaintiff's passport, entry permit and work permit. Defendant refused to turn them over to plaintiff after being requested.

## CONCLUSIONS OF LAW

1. The Court takes judicial notice of Public Law 1-20, the Commonwealth's Minimum Wage and Hour Law, which provides that every employer in the Commonwealth "shall pay to each employee employed by him, wages at a rate of not less than one dollar and thirty-five cents per hour" (Section 3); and further that "no employer shall employ any employee in excess of forty hours a week, unless the employee receives compensation for employment in excess of such weekly hours at a rate of not less than one and one-half times the regular rate at which he is employed." (Section 4).

2. Exempted from the coverage of PL 1-20 are employees "employed in domestic service." A person employed in a family store falls within the coverage of the law unless that person is a "son, daughter, spouse or parent(s)" of the employer. (Section 5a).

3.  Section 2c of PL 1-20 defines "Employ" as "to permit to work."

An almost identical definition of the word is found in 29 U.S.C. § 203(g) (The Fair Labor Standards Act).  In Fox v. Summit King Mines, 143 F.2d 926 (9th Cir. 1944), the court there stated that "The word(s) ('suffer' and) 'permit' as used in the statute means 'with the knowledge of the employer.'"  The case of Forester v. Roth's I.G.A. Foodtimer, Incorporated, _____ F.2d _____, slip opinion 9th Circuit Court of Appeals, decided 5/29/81, citing Fox with approval, goes on to say:

> Thus an employer who knows or should have known that an employee is or was working over-time must comply with the provisions of § 207. An employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation.

4.  Defendant permitted and thereby knew that plaintiff performed work as a housemaid (exempt) and as a store clerk (non-exempt).  Under these circumstances:

> The time spent engaged in exempt and non-exempt work cannot be segregated and workers performing both exempt and non-exempt work are entitled to the minimum wage and overtime for all work performed.
>
> Hammonds v. J. W. Broom & Sons, 195 F.Supp. 504 (1961); Waialua Agricultural Co. v. Ciraco Maneja, 77 F.Supp. 480, 491 (1948).

5.  Defendant's contention that "no oral testimony may be admitted to show a different agreement between the parties," is completely without merit.  In Wilson Oil Co. v. Hardy, 49 NW 337, 164 P.2d 209 (1945), the Court said:

> The minimum wage law is not only meant for
> the establishment of individual private rights,
> but is a solemn declaration on the part of the
> state that, as a matter of public policy, it is
> interested in seeing that its citizens are pro-
> tected in such rights.

The Court continues:

> It is apparently universally held that where a
> right has been given to an individual not alone
> for his private benefit, but as a matter of
> public policy, in the interest of the state, it
> may not be waived by anyone.  (citations omitted)

Accordingly, despite the parties written agreement to pay and receive $110.00 per month wages, and despite the actual payment of $125.00 per month for eight and one-half months, and despite their agreement that plaintiff was to be hired as a domestic and, therefore, exempt from the coverage of PL 1-20, neither employer nor employee may in any case contract for any amount that would result in pay less than the minimum specified by statute, nor may they contract for the performance of exempted work and in actuality perform non-exempt work without being subjected to payment of minimum wage and time and one-half for hours worked in excess of 40 hours per week.

6.   Due to defendant's mistaken belief that a live-in maid who is treated as a member of the family and who performs work in a "family store" is exempt from PL 1-20 coverage, the Court concludes no wilfulness to violate the law on her part.

7.   Plaintiff is entitled under the facts and law herein to payment of wages for the full term of her employment at the rate of $1.35 per hour and one and one-half times this rate for employment in excess of 40 hours a week.  For 52 weeks, therefore, this amounts to $7,441.20.

Deductions from this amount are:

(a) $1,392.50 - actual wages received

(b) $ 162.00 - 15 days not worked due to
illness at $1.35 per hour
for 8 hours per day

Total Amount Due To Plaintiff: $5,886.70

8. Plaintiff was entitled to the possession of her passport, entry permit and work permit. She is awarded nominal damages of $10.00 for defendant's refusal to turn these documents over to her.

9. Plaintiff is entitled to the cost of airplane passage to return to the Philippines.

10. Plaintiff is entitled to costs in the amount of $145.00 and reasonable attorneys fees in the amount of $1,100.00. (PL 1-20 Sec. 13c)

11. Defendant shall take nothing by her counterclaims against plaintiff.

12. Judgment in accordance herewith shall be prepared by Counsel for plaintiff and submitted to the Court for signature, filing and entry.

DATED: Saipan, Northern Mariana Islands this _5ᵗʰ_ day of _October_, 1981.

_____
ALFRED LAURETA
U.S. District Judge