# MITCHELL, SECRETARY OF LABOR, *v.* C. W. VOLLMER & CO., INC.

No. 387.   Argued March 3, 1955.—Decided June 6, 1955.

*Stuart Rothman* argued the cause for petitioner.   With him on the brief were *Solicitor General Soboloff, Ralph S. Spritzer, Bessie Margolin* and *Sylvia S. Ellison.*

*Eberhard P. Deutsch* argued the cause for respondent. With him on the brief was *René H. Himel, Jr.*

Mr. Justice Douglas delivered the opinion of the Court.

Petitioner brought this suit under § 17 of the Fair Labor Standards Act (52 Stat. 1060, as amended, 63 Stat. 910, 29 U. S. C. § 201 *et seq.*) to enjoin respondent from violating § 15 (a)(2) and § 15 (a)(5) of the Act. Those sections make unlawful violation of § 7 and § 11 (c) of the Act. Section 7 requires one and a half times the regular rate of pay for work in excess of 40 hours a week; and § 11 (c) requires the keeping of the records that are prescribed by regulations. 29 CFR, 1954 Cum. Supp., § 516.1 *et seq.* The contention is that respondent's violations of § 7 and § 11 (c) relate to work performed in the construction of an earthwork embankment and concrete platform for the Algiers Lock in Orleans Parish, Louisiana, a unit in the Gulf Intracoastal Waterway, extending from Florida to the Mexican border. The Algiers Lock is designed to furnish better passage into and across the Mississippi than is provided by the present Harvey Lock and Canal.

Respondent concedes that some of its employees on the Algiers Lock were employed for more than 40 hours per week without payment for overtime. Its defense is that its employees working on the Algiers Lock were not engaged in interstate commerce, and thus were not covered by the Act.[1]

The evidence at the trial was primarily directed to the question whether those working on the Algiers Lock were engaged in commerce within the meaning of § 7 of the Act. As already noted, the Algiers Lock will form part of the Gulf Intracoastal Waterway. It is designed to serve as an alternate route to the Harvey Lock and Canal. Relying on our decision in *Raymond* v. *Chicago, M. & St. P. R.*

---

[1] The only question presented and argued here concerns § 7 of the Act.

*Co.,* 243 U. S. 43, the District Court held that respondent's employees were not engaged in commerce and denied injunctive relief. 113 F. Supp. 235. The Court of Appeals for the Fifth Circuit affirmed *per curiam.* 214 F. 2d 132. To resolve an apparent conflict with *Tobin* v. *Pennington-Winter Const. Co.,* 198 F. 2d 334, we granted certiorari. 348 U. S. 886.

Section 7 of the Act makes the 40-hour week and the overtime provisions applicable to the Algiers Lock and Canal project if the respondent's employees at work on it are "engaged in commerce." It is argued that they are not engaged "in commerce," since the Algiers Lock is new construction and therefore in the category of the new tunnel that was being constructed in *Raymond* v. *Chicago, M. & St. P. R. Co., supra.* In the latter case, the Court held that an employee at work on a new tunnel for an interstate carrier was not subject to the Federal Employers' Liability Act, even though the tunnel, when completed, would be an interstate facility.

We do not think that case should control this one. We are dealing with a different Act of another vintage—one that has been given a liberal construction from *Kirschbaum Co.* v. *Walling,* 316 U. S. 517, to *Alstate Construction Co.* v. *Durkin,* 345 U. S. 13. The question whether an employee is engaged "in commerce" within the meaning of the present Act is determined by practical considerations, not by technical conceptions. See *Walling* v. *Jacksonville Paper Co.,* 317 U. S. 564, 570; *Overstreet* v. *North Shore Corp.,* 318 U. S. 125, 128, 130. The test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity. See *McLeod* v. *Threlkeld,* 319 U. S. 491, 497. Repair of facilities of interstate commerce is activity "in commerce" within the meaning of the Act, as we held in *Fitzgerald Co.* v. *Pedersen,* 324

U. S. 720. And we think the work of improving existing facilities of interstate commerce, involved in the present case, falls in the same category.[2]

The Gulf Intracoastal Waterway is an existing instrumentality of commerce. Without Algiers Lock, it has proved inadequate where it crosses the Mississippi. Harvey Lock cannot handle the traffic. Use of Harvey Lock entails travel through some five miles of the New Orleans harbor, already heavy with traffic. It is impractical to widen Harvey Lock because it is located in a highly developed industrial section of New Orleans. Algiers Lock is conceived as the practical alternative for relieving the congestion of the Waterway at this point. See S. Doc. No. 188, 78th Cong., 2d Sess., pp. 1–4. The work on Algiers Lock seems to us to have as intimate a relation to improvement of navigation on the Waterway as the dredging of Harvey Lock would have. It is part of the redesigning of an existing facility of interstate commerce. Those working on the Algiers Lock are therefore "engaged in commerce" within the meaning of § 7 of the Act.

*Reversed.*

MR. JUSTICE HARLAN took no part in the consideration or decision of this case.

MR. JUSTICE MINTON, with whom MR. JUSTICE FRANKFURTER joins, dissenting.

Only injunctive relief is sought here by the Secretary of Labor to prevent the violation of §§ 7 and 15 (a)(2) and §§ 11 (c) and 15 (a)(5) of the Fair Labor Standards Act, 29 U. S. C. § 201 *et seq.*, which require the payment

---

[2] The construction work held in *Murphey* v. *Reed*, 335 U. S. 865, not to be under the Act was the building of a Navy base, not the improvement of a facility or instrumentality of interstate commerce.

by employers of extra pay for overtime work and the keeping of records by them. 29 U. S. C. § 207 (a) provides:

> ". . . [N]o employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

It is contended that the respondent and its employees who were constructing this cutoff canal were "engaged in commerce." If they were not so engaged, an injunction will not lie. This presents a question of statutory construction in light of legislative, administrative, and judicial considerations.

The Federal Employers' Liability Act, 45 U. S. C. § 51 *et seq.*, provides that every railway common carrier while engaged in interstate commerce shall be liable in damages to any employee engaged in such commerce who suffers injury resulting from the negligence of the carrier. If the employee was not himself engaged in commerce, there can be no recovery under the Act.

In *Raymond* v. *Chicago, M. & St. P. R. Co.*, 243 U. S. 43, the company was engaged in the operation of a railroad between Chicago and Seattle. Its existing route went around the mountains, and the railroad sought to tunnel through the mountains. While constructing this tunnel, Raymond was injured and sued the railroad under the Federal Employers' Liability Act, claiming he was engaged in commerce when injured by the railroad's negligence. This Court held that Raymond was not engaged in commerce while working on the construction of this cutoff tunnel because its use in commerce was only

contemplated after completion. That is the exact situation here with reference to this canal.

In *New York Central R. Co.* v. *White*, 243 U. S. 188, a railroad was constructing a new station alongside its interstate line. White was a night watchman employed at the site of this new construction and was killed. His representative sued under the Federal Employers' Liability Act, claiming that he was engaged in commerce, but this Court held that he was not engaged in commerce as he went about his duties at the site of this new construction.

In the interpretation and application of the Fair Labor Standards Act, the federal courts have adopted the rule of the *Raymond* and *White* cases, which arose under the Federal Employers' Liability Act. A prerequisite to the application of either Act was that the employee be engaged in commerce. This rule came to be known as the "new construction rule" and was applied by this Court in *Murphey* v. *Reed*, 335 U. S. 865. It was also applied by the First Circuit in *Nieves* v. *Standard Dredging Corp.*, 152 F. 2d 719, where the employer was dredging a channel for navigation in a previously nonnavigable stream. The Second Circuit in *Scholl* v. *McWilliams Dredging Co.*, 169 F. 2d 729, applied the rule where the employer was engaged in the construction of a new air base in Greenland that had not yet been used in foreign commerce. The Third Circuit applied the rule in *Kelly* v. *Ford, Bacon & Davis, Inc.*, 162 F. 2d 555, where the employer was engaged in building a new plant for the construction of aircraft engines later to be used in commerce, but which plant was only an additional facility for such work. It was held in this case that the employer was not only not engaged in commerce, but it was not engaged in the production of goods for commerce. The Fifth Circuit, in another case beside the one under consideration, applied

the rule of new construction to the building of an expressway which, when completed, would have routed over it several interstate highways. *Van Klaveren* v. *Killian-House Co.*, 210 F. 2d 510. The Sixth Circuit in *Koepfle* v. *Garavaglia*, 200 F. 2d 191, applied the rule to another case of new construction of an expressway to be later integrated into a highway system. The Eighth Circuit in *Crabb* v. *Welden Bros.*, 164 F. 2d 797, applied the rule in the construction of the Alcan Highway. The Tenth Circuit in *Moss* v. *Gillioz Const. Co.*, 206 F. 2d 819, similarly applied the rule in the construction of a new bridge at 51st Street, south of Tulsa, Oklahoma, over which interstate traffic then using the 11th Street Bridge could be routed.

The agencies responsible for the administration of the Act had interpreted it as not applying to new construction not yet used in interstate commerce. Wage and Hour Interpretative Bulletin No. 5, ¶12, Dec. 2, 1938; BNA, 1944–1945 WH Man. 23:

> "The question arises whether the employees of builders and contractors are entitled to the benefits of the Act. The employees of local construction contractors generally are not engaged in interstate commerce and do not produce any goods which are shipped or sold across State lines. Thus, it is our opinion that employees engaged in the original construction of buildings are not generally within the scope of the Act, even if the buildings when completed will be used to produce goods for commerce. . . ."

In the Wage Hour Manual, Bureau of National Affairs Labor Relations Reporter, Vol. 6, 10:237, the rule is interpreted as follows:

> "In interpreting the Act's application to employers in the building and construction industry, the Wage

and Hour Division and the courts have drawn a distinction between the original construction of buildings or facilities and their repair or reconstruction."

We are not dealing here with improving or repairing existing facilities which are already in commerce, but with new construction that has never been used in commerce.

It seems, therefore, that the Secretary of Labor has quite recently changed his mind about the application of the Act to new construction not yet used or not an integral part of interstate commerce. His change of mind should not change the law. This Court, which may change the law, seems to have changed its mind about the same time and without saying why it does so, except that the foregoing cases are of a different vintage. I am unable to distinguish the cases on the vintage test. Without overruling the *Raymond, White* and *Murphey* decisions and the number of cases decided by the Circuit Courts, this Court brushes them off as of another vintage.

Reliance upon this Court's opinions becomes a hazardous business for lawyers and judges, not to mention contractors, who are not familiar with the vintage test.