James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,

v.

W. E. BELCHER LUMBER COMPANY, Inc., Brady Belcher and W. E. Belcher, Jr., Appellees.

No. 18080.

United States Court of Appeals Fifth Circuit.

June 13, 1960.

Sylvia S. Ellison, Chief of Appellate Litigation, Bessie Margolin, Asst. Sol. Dept. of Labor, Washington, D. C., Harold C. Nystrom, Acting Sol., John M. Brant, Attorney, United States Department of Labor, Washington, D. C., Beverley R. Worrell, Regional Attorney, Birmingham, Ala., for appellant.

C. V. Stelzenmuller, Birmingham, Ala., John D. McQueen, Jr., Tuscaloosa, Ala., George P. White, Centreville, Ala., McQueen & McQueen, Tuscaloosa, Ala., Burr, McKamy, Moore & Thomas, Birmingham, Ala., of counsel, for appellees.

Before HUTCHESON, TUTTLE, and JONES, Circuit Judges.

JONES, Circuit Judge.

The Secretary of Labor brought suit against W. E. Belcher Lumber Company, Inc., hereafter generally referred to as the Company, and two of its officers, to enjoin violations of the minimum wage provisions of the Fair Labor Standards Act,[1] with respect to eleven persons who were, or were contended by the Secretary to be, employees of the Company. These eleven persons, so the Secretary asserted, were engaged in the production of goods for interstate commerce within the meaning of the Act. The district court held that the eleven persons were employees of the Company but were not engaged in the production of goods for interstate commerce. The injunction was denied and the Secretary has appealed.

The Company has two sawmills, a planing mill, a pulpwood plant, a dry kiln and a storage yard for lumber. It owns about 95,000 acres of timber land in Alabama. The Company has a varying number of employees, sometimes as many as five hundred. Its principal business is the production and marketing of lumber. Much of the lumber produced goes into interstate commerce. The eleven persons about whom this controversy centers were employees of the Company and were engaged part of the time in girdling hardwood trees and in planting pine seedlings. The girdling process is a cutting of a band around an undesirable tree and inserting poison, causing the tree to die, fall and rot, and permit the better growth of pine. Girdling is done throughout nine months of the year. Pine seedlings are planted by making a hole with a dibble, which is a narrow spade, placing the root of the seedling in the hole and closing the hole around the root. There are machines for planting pine seedlings but none were used by those whose labor is involved in these proceedings. This tree planting was an operation carried on during three months of the year.

On April 20, 1956, the Company made an arrangement, with Clint Taylor, who had been foreman of the planting and girdling crew, under which the Company made payments to Taylor measured by the number of seedlings planted and the number of acres on which girdling had been done. Taylor paid the men on an hourly basis at the rate of .80c per hour. The piece work rates were increased on occasions when it appeared that the operation was unprofitable to Taylor. The Company assisted Taylor in making arrangements for workmen's compensation insurance. One of the Company's employees did his modest bookkeeping chores. The equipment used in the work was provided by the Company.

There were two issues in the district court; first, whether the employees were working for the Company or for Taylor as an independent contractor, and second, whether the employees were engaged in the production of goods for interstate commerce within the meaning of the Act. The court resolved the first of these questions for the Secretary, holding that Taylor had merely doffed the hat of employee and put on that of independent contractor and the arrangement was only a labeling device and not a genuine severance of the employer-employee relationship between the Company and the men of the crew. On the other issue the district court's decision went to the Company with a holding that the planting and girdling operations were not production of goods for interstate commerce. The Secretary challenges this holding by his appeal, and the Company defends the decision both on the ground where the court placed it, and upon the independent contractor basis which the court rejected.

The question which seems to us to be decisive of the controversy is whether the persons who were planting pine seedlings and girdling oak trees were, within the meaning of the Act as amended in 1949, "employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production

1. 29 U.S.C.A. § 201 et seq.

thereof, in any State." 29 U.S.C.A. § 203 (j). The Secretary, with more vigor than logic, insists that we must hold that the girdling and planting operations are the handling of the very goods that will ultimately find their way into interstate commerce. This, the Secretary says, is required by the rule in Mitchell v. Jaffe, 5 Cir., 1958, 261 F.2d 883. In Jaffe it was held that where scrap metal was stripped from wrecked automobiles and through commercial channels went into the furnaces of steel and iron for interstate commerce, the persons who were engaged in stripping the metal from the automobiles were handling the "very goods" that were being produced for commerce. It cannot fairly be said, we think, that a pine seedling is the raw material for either a sawmill or a pulp and paper mill. It is to be hoped, and perhaps might be presumed though this is challenged by the appellee, that out of the combination of seedling, soil, moisture, sunlight, and time the mysterious processes of nature will, in the course of time ranging between a half a generation and a half a century, create a tree. The tree when grown and severed may become the raw material for the production of goods and so, as in Jaffe, be the very "goods" in production. But this does not mean, and the doctrine of practicality [2] does not require that we hold that the pine seedlings are goods in commerce or that the planting of them is the production, by handling or otherwise, of goods in commerce.

▇ If the planting and girdling are not regarded as the production of goods by handling or in some other manner working on goods, then, the Secretary urges, the work of those engaged in these operations is "in any closely related process or occupation directly essential to the production thereof." 29 U.S.C.A. § 203 (j). The quoted language was incorporated into the Act by the amendments of 1949. This clause was originally written "in any process or occupation necessary to the production thereof." The purpose of the amendment was to require, for coverage by the Act, a closer and more direct relationship by the employee to the producing, manufacturing, etc., than had previously existed in many circumstances under the original Act. S. Rep. No. 640, Conf.Rep. No. 1453, 81st Cong. 1st Sess., 2 U.S.C.Cong.Ser.1949, 2241, 2253. The most recent as well as the most exhaustive exposition of the purpose, meaning and effect of the 1949 amendment is the opinion of the Supreme Court in Mitchell v. H. B. Zachry Co., 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753. In this opinion it is shown that by the use of "closely related" and "directly essential" the Congress had adopted a more restricted policy of coverage than prevailed under the original act as it had sometimes been applied by the courts. By the amendment the outer limits of applicability were restricted.

The closeness or the farness of the relationship of the occupational activity to the production of goods is the test by which coverage must here be determined. The remoteness which will place the activity beyond the periphery of coverage may be of time as well as of a functional connection. Seldom will be found a situation where a longer time period must intervene between the particular employment and the production of goods. We think the period is too remote.

▇ In its report, cited supra, the Congressional Committee in explaining the amendment made references to cases in which it could no longer be held that the Act was applicable because the activities in such cases are not closely related and directly essential to production. Among the cases which the Congress intended to overrule by the amendment is McComb v. Super-A Fertilizer Works, 1 Cir., 1948, 165 F.2d 824. There it was held that employees of a manufacturer of fertilizer in Puerto Rico were covered by the Act. The fertilizer was sold to local farmers who used it upon land on which sugar cane was grown. The cane was sold to sugar mills and processed in-

2. Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196.

to molasses and sugar which were exported. It was held that the manufacture of fertilizer was necessary for the production of sugar for interstate commerce and hence the manufacture of fertilizer was a covered employment. Under the "closely related" and "directly essential" provisions such employment is not covered. If the making of fertilizer, necessary to the production of sugar, is not closely related and directly essential to such production, it would seem that the governing principle would preclude a determination that the planting of a seedling was closely related and directly essential to the far-in-the-future production of lumber or pulp and paper.

We have reached the conclusion that the planting of pine seedlings is not producing goods in commerce or a closely related occupation directly essential to such production. It follows that the same result must be reached as to the girdling of oak trees.

The judgment of the district court is

Affirmed.