Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

James G. FRITSCHY, doing business as Fritschy's Auto and Salvage, Defendant.

Civ. A. Nos. 1811, 1812, 1933.

United States District Court
W. D. North Carolina,
Asheville Division.

Oct. 27, 1961.

**744**

Charles Donohue, Sol., Washington, D. C., Beverley R. Worrell, Regional
Atty., and William Fauver, Atty., Birmingham, Ala., United States Department of Labor, for plaintiff.

Uzzell & DuMont, Asheville, N. Car., for defendant.

WARLICK, Chief Judge.

These are three related cases all of which have been instituted by the Secretary of Labor, and no conflict appearing, they were consolidated for trial, by consent, on August 2, 1961. Nos. 1811 and 1812 were instituted on October 27, 1958, and No. 1933 on August 10, 1960. All involve the same defendant and relate to alleged violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq., and hereinafter referred to as the Act. Originally the consolidated actions were instituted in the name of James P. Mitchell, then Secretary of Labor, and subsequently on petition and order, Arthur J. Goldberg, now Secretary of Labor, was substituted.

In No. 1811, the Secretary of Labor seeks an injunction under Section 17 of the Act to prevent alleged violations of certain provisions of the Act, namely Sections 15(a) (1), 15(a) (2), 15(a) (4) and 15(a) (5). 29 U.S.C.A. § 215.

No. 1812 was commenced under Section 16(c) of the Act pursuant to the written request of Roy Fowler and Ralph Godfrey, two former employees of defendant Fritschy. Under this procedure when the requests are so made, the Secretary of Labor is authorized to bring an action on behalf of said employees to recover unpaid minimum wages and unpaid overtime compensation allegedly due them under Sections 6 and 7 of the Act.

No. 1933 was also instituted under the 16(c) procedure pursuant to the written request of one Leonard C. Sprouse, another former employee of the defendant, who also seeks alleged unpaid minimum wage and unpaid overtime compensation under Sections 6 and 7 of the Act.

The essential questions are the usual ones in cases of this type, i. e., whether or not the Act is applicable to Fritschy's employees, and also whether his establish-

ment is exempt from certain provisions of the Act by reason of exemptions found in Section 13(a) (2) of the Act.

James G. Fritschy for many years has operated an automobile repair business in the City of Asheville at 775 Merrimon Avenue. Until 1956 he maintained at that site both his repair shop and also on the same premises and within the same enclosure his storage lot. On this lot were stored wrecked cars hauled in by his towing wreckers,—and these wrecked vehicles were the source of many used parts which were removed for use in the repair of similar makes and models in his repair shop. 775 Merrimon Avenue is located in a first class residential area of Asheville, and being one of the principal routes of entry to the city by travelers and tourists, the city authorities persuaded Fritschy to remove his storage lot to a less conspicuous area, since Asheville is decidedly a tourist center. Thereafter he acquired by lease the property at 665 Riverside Drive and about one and one half miles distant from his place of business on Merrimon, in which area are many maunfacturing plants, railroad yards and warehouses. He moved his storage lot to this site and his operation continued as before. The lot was labeled "Fritschy's No. 2" and on this lot exactly the same functions as had been performed while at 775 Merrimon Avenue were carried on. On the storage lot, both before and after the change of location, the principal objective was the removal of useable parts from the vehicles. Fritschy's repair shop continued to have first call on any parts and in the event that he had no need therefor, his employees on the storage lot were authorized to sell them either to individuals who might come on the lot or to automobile dealers in the area who might have need for them. When an automobile had been completely stripped of all worthwhile parts, the evidence shows that the scrap metal was then sold to Shulimson Brothers Company or to the Biltmore Iron & Metal Co. in Asheville. Both of these companies were local buyers of scrap metal and iron, and representatives of both companies testified that approximately 90 to 95 per cent of the scrap metal which they bought was then shipped out of the State of North Carolina to be reprocessed and fabricated in the steel mills throughout the country.

■ The first question here is to determine whether the employees in whose behalf these actions have been instituted were "engaged in commerce or production of goods for commerce" so as to fall within the coverage of the Act. The test is stated to be "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 429, 75 S. Ct. 860, 862, 99 L.Ed. 1196.

■ The three individuals for whom the Labor Department prosecutes these actions worked at the Riverside Drive lot, two of them having also worked at the Merrimon Avenue garage at times. All of them testified that their duties were to keep the lot clean, the removal of parts from the wrecked cars by the use of acetylene torches and other equipment, and the loading and hauling of scrap metals and batteries to Shulimson Brothers Company and Biltmore Iron & Metal Co. It thus appears that all three were within the coverage of the Act as they were engaged in the production of goods for commerce. It makes no difference that the scrap metal handler by the plaintiffs was sold by the defendant to other scrap dealers within state before going into the channels of interstate commerce. This was the destination expected and intended by the defendant; and "the Act extends at least to the employer who expects goods to move in interstate commerce". Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 127, 87 L.Ed. 83; United States v. Darby, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L.Ed. 609. Judge Parker states in Bracey v. Luray, 4 Cir., 138 F. 2d 8 at page 11:

"It is of no significance that all of the transactions to which the em-

ployer is a party occur wholly intra-state, where he expects that the goods produced will move in inter-state commerce. It has been so held where he merely sells goods intra-state to one who he knows will sell them in interstate commerce."

The defendant interposes the defense that he is exempt from the provisions of Sections 6 and 7 of the Act by reason of the retail or service establishment ex-emption provided for in Section 13(a) (2) of the Act. In order to come within the narrowly defined limits of the ex-emption, certain requirements are set forth therein:

1. More than 50 per cent of the an-nual dollar volume of sales of goods or services must be made within the state in which the establishment is located.

2. At least 75 per cent of the annual dollar volume of sales of goods or serv-ices (or of both) must not be for resale.

3. At least 75 per cent of the annual dollar volume of sales of goods or serv-ices (or of both) must be recognized as retail sales or services in the industry.

[4, 5] The term "establishment", as set forth in Section 13(a) (2), is defined as a distinct, physical place of business, and is not to be construed as synonymous with the word "business" or "enterprise" as applied to multi-unit companies. Phil-lips, Inc., v. Walling, 324 U.S. 490, 65 S. Ct. 807, 89 L.Ed. 1095; Mitchell v. Bek-ins Van & Storage Co., 352 U.S. 1027, 77 S.Ct. 593, 1 L.Ed.2d 589; Title 29 Code of Federal Regulations, Chapter V, Part 779, § 779.3(b). Defendant Fritschy contends that in computing the percent-ages prescribed in Section 13(a) (2) the total sales of both the Merrimon Avenue garage and the Riverside Drive storage lot must be figured together, and that therefore the sales of scrap metal amount to only a small portion of his annual dol-lar volume. If this reasoning is follow-ed then it follows that Fritschy is not covered by the Act because the evidence shows that as compared with his total volume, the scrap iron sales represent but a small portion.

The Labor Department contends that the storage lot at 665 Riverside Drive represented a separate establishment, and that therefore its sales and services alone are to be the gauge by which the 13(a) (2) exemption is computed.

After a careful study of the factual sit-uation which these cases present, I con-clude that the defendant James G. Frit-schy operated but one establishment. This decision is reached for the reason that the lot at 665 Riverside Drive was merely a continuation of the lot which Fritschy maintained adjacent to, beside of and behind his repair shop on Merri-mon Avenue. He had no valid business reason for moving the lot—it would re-quire an additional foreman, the addition-al expense of towing cars his wreckers pulled into the Merrimon Avenue garage on over to the Riverside Drive lot for storage, and the expense of having parts needed in the repair shop delivered to it from the storage lot. Indeed, the evi-dence shows that the sole purpose for the removal of his storage lot from his Mer-rimon Avenue location was as a matter of courtesy to the City of Asheville, and his regard for and his appreciation of Asheville and its residential appearance. The function of the storage lot remained the same, i. e., to supply used parts for use in the automobile repair shop.

As there is but one establishment, it qualifies for the retail or service estab-lishment exemption set forth in 29 U.S.C. A. § 213(a) (2). The three conditions of the exemptions heretofore set forth are explicit prerequisites to exemption, not merely suggested guidelines for ju-dicial determination of the employer's status. Mitchell v. Kentucky Finance Co., 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815; Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393. With this in mind, it is found as a fact that more than 50 per cent of Fritschy's annual dollar volume of sales of goods or services were made within the State of North Carolina; in fact, practically all were made within this state. Further, I find that more than 75 per cent of the annual dollar volume of sales of goods

or services (or of both) were not for resale and were recognized as retail sales in the industry.

The defendant's establishment is primarily a service establishment within the terms of the statute. The words "retail" and "service" are required to be interpreted similarly, however, which makes it appropriate to restrict the broader meaning of "service" to a meaning comparable to that given the narrower term "retail". Roland Electric Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383. The "service" establishment must therefore be of the same sort as the "retail" establishment, that is, one selling services to consumers, and the exemption is limited to those serving consumers directly. Guess v. Montague, 4 Cir., 140 F.2d 500. The automobile repair shop is classified among the types of establishments whose sales or services may be recognized as retail. Wood v. Central Sand & Gravel Co., 33 F.Supp. 40, 47; Title 29 Code of Federal Regulations, Chapter V, Part 779, § 779.10. It immediately follows and I therefore conclude that the defendant's establishment is not within the coverage of the Act as to the plaintiff's actions under Sections 6, 7, and 15(a) (2) of the Act and that the individuals in whose behalf the actions were brought are not entitled to recover the amounts they claim.

 The evidence does show, however, that Ralph Godfrey, one of the three employees involved in this controversy, was born on June 14, 1939, and that he was employed by the defendant Fritschy from November 1956 until February 1957, during which time he was but 17 years of age. He was employed in the production of goods for commerce as the facts appear in that he helped haul by truck the scrap metal which was sold to local dealers and then subsequently shipped in interstate commerce. The retail or service establishment exemption found in Section 13(a) (2) of the Act exempts one from coverage only as to alleged violations of Sections 6 and 7 of the Act, and makes no mention of exempting one from coverage as to the use of oppressive child labor. The court finds that the defendant has employed oppressive child labor as defined in 29 U.S.C.A. § 203(l) of the Act and Title 29 Code of Federal Regulations, Subtitle A, Subpart E, § 4.52, and therefore an order enjoining and restraining the defendant from further violation of Section 12 of the Act will issue. In this ruling I am well aware that the question appears moot in that it does not appear that Fritschy presently employs child labor, nor does it appear that he was aware of it in the particular instance complained of by the Secretary but the national policy toward the enforcement of this section demands that violations not be treated lightly by the courts. Lenroot v. Kemp, 5 Cir., 153 F.2d 153.

Conclusions of Law:

1. The court has jurisdiction of the parties and the subject matter of these actions. 28 U.S.C.A. § 1337, 29 U.S.C. A. § 216(c), § 217.

2. With respect to alleged violations of Section 6 and Section 7 of the Fair Labor Standards Act of 1938, as amended, the defendant is exempt from coverage under the Act by reason of the retail or service establishment exemptions set forth in Section 13(a) (2) of the Act.

3. By the employment of a minor under the age of 18 in what is termed a hazardous occupation, the defendant has violated the provisions of Section 12 of the Fair Labor Standards Act and is hereby enjoined and restrained from further violation of said provision.

4. Counsel will submit decree in accordance with this memorandum opinion.