Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

FORCUM–LANNOM, INC., Defendant.

Civ. A. No. 4335.

United States District Court
W. D. Tennessee, W. D.

May 16, 1962.

David V. Manker, Nashville, Tenn., and Jeter S. Ray, Regional Atty., U. S. Dept. of Labor, Nashville, Tenn., for plaintiff.

Cecil Sims, Nashville, Tenn., for defendant.

BROWN, District Judge.

This is an action brought by the Secretary of Labor against Forcum-Lannom, Inc., alleging violations of, and seeking only an injunction against future violations of, the minimum wage, overtime, and record-keeping provisions of the Fair Labor Standards Act (29 U.S.C.A. § 201 et seq.). Jurisdiction is conferred upon this court by § 17 of the Act.

Defendant has answered contending that it was not, at the time claimed by the plaintiff, subject to the Act with respect to the employees involved and that, in any event, this court should not exercise its discretionary injunctive powers in this case.

The case was tried before the court without a jury, and the court has prepared and filed this memorandum opinion in lieu of findings of fact and conclusions of law.

Defendant corporation carries on several business activities in and around Dyersburg, Tennessee, one of which is a plant for the production of ready-mixed concrete. It was in connection with the operation of this plant that plaintiff contends defendant was in violation of the Act.

At the trial, defendant did not seriously claim that it has fully complied with the minimum wage, overtime and record-keeping provisions of the Act (and the Regulations issued thereunder). It based its defense, as stated, on the proposition that the employees at the concrete plant were not engaged in the production of goods for commerce within the meaning of the Act.

The duties of the employees with which we are concerned were either the handling and mixing of the ingredients, the repairing and maintaining of the plant and equipment, or the delivering of concrete by truck to customers.

The Secretary of Labor bases his case as to coverage on the sale and delivery of ready-mixed concrete to three contractors who were carrying on three separate highway construction jobs, two of which were on U. S. Highway 51 and the other of which was on State of Tennessee Highway No. 20. The parties have stipulated that both highways carry a substantial amount of interstate traffic, commercial and private.

U. S. Highway 51 is a main artery through Memphis northward and at the time involved ran in two lanes directly through Halls to Dyersburg, Tennessee, and thence on to Cairo, Illinois and Chicago. Associated Contractors and Engineers had the contract to construct a four lane divided highway beginning about one mile west of Halls on State Highway 88, and running northeastwardly and crossing to the east of Highway 51, at a point just south of Dyersburg. The construction then ran parallel to Highway 51, the old highway becoming the west half of the divided highway. The project at its north end joined the new divided by-pass which runs west of Dyersburg and was, in all, 8.416 miles long. Upon completion of the project, traffic on old Highway 51 was to be routed over the new divided highway, which was to be so designated. Old Highway 51 from Halls northwardly to the point at which the construction crossed over would be used only as a means of egress and ingress for adjoining property owners.

The second project with which we are concerned was being carried out by Ford Construction Company and involved only the widening and resurfacing of Highway 51 at a point further north and between Newbern and Trimble, Tennessee. No new right-of-way was involved. The entire project consisted of 7.458 miles.

The third project with which we are concerned was being carried out by Pioneer Contracting Company and involved only the straightening and widening of existing State Highway 20 in Dyer County, Tennessee, after which all traffic on that highway would be routed over this new road which would be designated Highway 20. This project involved new right-of-way and consisted of 5.284 miles.

Stated briefly, defendant contends that the supplying of concrete to these projects was not production of goods for commerce, as these projects were "new construction," relying on Koepfle v. Garavaglia, 200 F.2d 191 (6th Cir. 1952). In Koepfle, the project was a new expressway in Detroit which, when finished, would be integrated into the interstate highway system, and the Court held that a supplier for the contractor was not producing goods for commerce.

Koepfle can be distinguished on its facts from this case because the expressway there was not in replacement of an existing facility, while here all three projects either replaced or were on the right-of-way of an existing facility.

Moreover, the Supreme Court in Mitchell v. C. W. Vollmer, 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196 (1955), which involved the construction of a new lock on the Gulf Intercoastal Waterway, apparently abandoned the "new construction" test. See Southern Pacific Co. v. Gileo, 351 U.S. 493, 500, 76 S.Ct. 952, 957, 100 L.Ed. 1357, 1365 (1956). The purpose of constructing the lock was to provide an alternate route on the waterway to avoid congestion of marine traffic. There the Court said, 349 U.S. at 429, 75 S.Ct. at 862:

"The test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity."

The Court of Appeals for the Sixth Circuit, recognizing and relying upon the new thrust of Vollmer, in Mitchell v. Owen, 292 F.2d 71 (6th Cir. 1961) held that employees were covered under facts very similar to those in the case at bar, without even citing its own decision in Koepfle. See Archer v. Brown & Root, Inc., 241 F.2d 663 (5th Cir. 1957), cert. denied, 355 U.S. 825, 78 S.Ct. 33, 2 L.Ed.2d 39, for a similar interpretation of the effect of Vollmer, wherein the court held that the supplying of a con-

tractor building a causeway, where none had existed before, across Lake Pontchartrain, was production of goods for commerce.

■ Accordingly, the production and supplying of ready-mixed concrete to the three projects in this case was clearly production of goods for commerce as contemplated by the Act.

Defendant also relies, secondarily, on the "local" nature of its operation. That is to say, defendant contends that the employees at the plant in any event were not covered because the main business of the plant was not the production of goods for commerce.

The proof showed that between the week ending November 27, 1959, and the week ending June 30, 1961, at least 6,074 cubic yards of concrete were furnished to Associated and deliveries were made during seventy-one of the eighty-four weeks within the period. During the period between the week ending September 29, 1961 and the week ending December 8, 1961, 218.25 cubic yards were supplied to Ford, and the deliveries were made in ten of the eleven weeks of the period. During the period from the week ending September 1, 1961 to the week ending December 22, 1961, 657.25 cubic yards were supplied to Pioneer, such deliveries having been made in fourteen of the seventeen weeks of the period.

■ It clearly appears here that the deliveries were regular as opposed to sporadic or occasional and therefore constituted the production of goods for commerce regardless of the predominantly "local" disposition of the defendant's product. Mabee v. White Plains Publishing Co., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607 (1946). Chapman v. Home Ice Co. of Memphis, 136 F.2d 353 (6th Cir. 1943), cert. denied, 320 U.S. 761, 64 S.Ct. 72, 88 L.Ed. 454.

Lastly, defendant contends that in any event an injunction should not issue (1) because in determining it was not covered it acted on advice of counsel, (2) because " * * * [T]he three incidents * * * were isolated and non-recurring

* * *", and (3) because it has acknowledged its willingness to comply in the event this court should hold it was covered.

■ The adjudicated cases indicate that an employer not in compliance with the Act has a heavy burden in resisting an injunction. In Mitchell v. Pidcock, 299 F.2d 281 (5th Cir. 1962), for example, the Court held that the fact that the employer acted on advice of counsel was no defense if the law to the contrary was clear, and further held that a statement at the trial of intention to comply should be given little significance. See also Mitchell v. Ballenger Paving Co., 299 F.2d 297 (5th Cir. 1962).

Certainly the Vollmer case, supra, clearly supported the plaintiff's position at the time of his investigation in this case. And even if it could be said that the Owen case, supra, which was decided for the employer in the trial court and which was then on appeal, supported defendant's position at the time of the investigation, it was reversed on June 30, 1961, prior to the filing of this suit on October 5, 1961. Moreover, in its points and authorities filed in this cause on January 20, 1962, in anticipation of the trial, defendant relied only on the Owen case, supra, seeking to distinguish it, and Koepfle, supra, upon which defendant now heavily relies, was first mentioned at the trial.

Moreover, the many sales made over a considerable period of time could hardly be called "isolated and non-recurring." Defendant did offer some proof that highway construction in its effective trade area was about complete. However, there was also proof that a new and divided Highway 51 immediately to the south of the Associated project was already planned, and of course highways and roads are continuously being built, repaired and improved. See Compania De Ingenieros Y Contratistas, Inc. v. Goldberg, 289 F.2d 78, 81 (1st Cir. 1961).

Defendant has not indicated a willingness to reimburse the employees for their wage deficiencies in the event this Court should hold that there was coverage. See Mitchell v. Ballenger Paving Co., supra, 299 F.2d at 301–302.

Lastly, it should be pointed out, as stated in Pidcock, supra, 299 F.2d at page 287:

"In reaching the conclusion that an injunction should issue, we are influenced by the objectives of statute and the nature of the proceedings. * * * [T]his proceeding is only superficially related to a suit in equity for an injunction to protect interests jeopardized in a private controversy. The public interest is jeopardized here. The injunctive processes are a means of effecting general compliance with national policy as expressed by Congress, a public policy judges too must carry out—actuated by the spirit of the law and not begrudgingly as if it were a newly imposed fiat of a presidium.

\*     \*     \*     \*     \*

"We say that the manifest difficulty of the Government's inspecting, investigating, and litigating every complaint of a violation weighs heavily in favor of enforcement by injunction—*after* the court has found an unquestionable violation of the Act."

■ On all the circumstances, the Court holds that an injunction should issue. Mitchell v. Hodges Contracting Co., 238 F.2d 380 (5th Cir. 1956).

The judgment prepared by plaintiff and heretofore submitted will, with slight amendment, be entered.

## JUDGMENT

The above-styled cause having come on regularly for trial before this Court, sitting without a jury, at Memphis, Tennessee, on January 24, and January 25, 1962, and the Court having considered the pleadings, the oral testimony of numerous witnesses, the documentary evidence introduced, the exhibits filed, the stipulations of the parties, and the cause

having been submitted to the Court upon the entire record and the briefs filed herein, and the Court having entered a memorandum decision,

NOW, THEREFORE, sufficient reason therefor appearing, and upon the findings of fact and conclusions of law made and contained in said memorandum opinion, it is

ORDERED, ADJUDGED AND DECREED that:

The defendant, Forcum-Lannom, Inc., its officers, agents, servants, employees, attorneys and all persons acting or claiming to act in its behalf or interest be, and they hereby are, permanently enjoined and restrained from violating the provisions of Sections 15(a) (2) and 15 (a) (5) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 201 et seq.), hereinafter referred to as the Act, in any of the following manners:

(1) The defendant shall not, contrary to Section 6 of the Act, employ, suffer or permit any of its employees engaged in commerce or in the production of goods for commerce, within the meaning of the Act, to work for wages at a rate less than the rate required by Section 6 of the Act.

(2) The defendant shall not, contrary to Section 7 of the Act, employ any employee in commerce or in the production of goods for commerce, within the meaning of the Act, for a workweek longer than that prescribed by the applicable provisions of Section 7 of the Act, unless each such employee receives compensation for his employment in excess of the prescribed number of hours at a rate not less than one and one-half (1½) times the regular rate at which he is employed.

(3) The defendant shall not fail to make, keep and preserve adequate and accurate records of its employees and of the wages, hours and other conditions and practices of employment maintained by it, as prescribed by the regulations of the Administrator issued, and from time to time amended, pursuant to Section 11 (c) of the Act.

It is FURTHER ORDERED, ADJUDGED AND DECREED that the costs of this cause shall be paid by the defendant, for which execution shall issue.

Approved for entry.