W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

UNIVERSAL ADVERTISING SERVICE, Defendant.

Civ. No. 6369.

United States District Court
N. D. Oklahoma.

Sept. 22, 1966.

Charles Donahue, Sol., Truett E. Bean, and M. J. Parmenter, Dallas, Tex., for plaintiff.

Perry Krohn, Ungerman, Grabel, Ungerman & Leiter, Tulsa, Okl., for defendant.

OPINION

BOHANON, District Judge.

This is an action brought by the Secretary of Labor, United States Department of Labor, alleging that Universal Advertising Service has been and is employing a number of employees in interstate commerce in violation of the requirements of Section 6 (Minimum Wage) and Section 7 (Overtime Compensation) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 201 et seq.), hereinafter referred to as the Act. The Secretary also charges the defendant with failure to make, keep, and preserve records required by Regulations (29 C.F.R., Part. 516) promulgated and issued under the authority of Section 11(c) of the Act. An injunction is

sought restraining defendant from future violations.

Defendant denies violating the Act, contending that it has never been engaged in interstate commerce or other activity within the scope thereof, and as a separate defense, alleges that it has employed from time to time numerous independent contractors engaged in work wholly within the confines of the State of Oklahoma, and at no time have either it or its independent contractors been involved in transactions involving interstate commerce.

Both plaintiff and defendant have filed separate motions for summary judgment. Counsel for the parties announced in open Court that neither desired to offer additional evidence and that each was satisfied with the record as then constituted.

Universal has abandoned its independent contractor defense. The only question left for decision is whether defendant's employees, during the period involved, were engaged in commerce within the meaning of the Act.

The Court, after considering the pleadings, stipulations, affidavits with attached exhibits, and the briefs submitted by counsel, is of the opinion that there are no genuine issues of material facts and that the record is sufficient for a decision on the legal issue involved.

This Court has jurisdiction of the parties and the subject matter. It is clear that this cause is one specifically authorized by Section 17 of the Act.

The defendant is a corporation, having been chartered as such under the laws of Oklahoma. Its office and principal place of business is located in Tulsa, Oklahoma, where it is engaged in procuring, receiving, handling, and distributing advertising matter such as circulars, handbills, and similar printed matter for commercial firms, retail stores, and shopping centers. Distribution is confined to Tulsa County, primarily within the metropolitan area of the city of Tulsa.

At times during a portion of the year 1964, Universal procured advertising material for its customers from a printing company located in the state of Kansas. Substantial shipments of such material were made directly to its Tulsa establishment and were received there at fairly regular intervals. The practice of receiving material from out-of-state sources such as this at defendant's place of business has been discontinued, the exact date of which is not clear from the record. In any event, such change has no special significance as far as the legal question at issue is concerned.

A substantial part of Universal's business has been with retail establishments which are a part of chains having central or home offices in other states.

There are some small variances in the manner in which such chains handle their advertising programs, but basically, they appear to be essentially the same. Advance planning is usually commenced several months prior to sales scheduled for special events such as Mother's Day, Easter, July 4th, and others. Schedules are prepared by home office personnel or by an advertising agency located outside Oklahoma, and then furnished to local store managers. These schedules generally reflect the type of sales promotion that will be followed, the goods which will be advertised for sale, the dates during which sale prices will be in effect, and the dates when sale circulars and like material will be sent for receipt at the local retail store.

The advertising material is shipped at a time which will insure its receipt by the store within a few days prior to the scheduled start of a particular sale. This will vary from two to six days. The material is delivered by carrier to the door or dock of the retail store, where little, if any, handling is done by employees of the store. It remains in the condition it was received while awaiting delivery to the defendant. Universal is notified when to pick up the material, the date it is to be distributed, and the area within which distribution is to be made. This area is well defined, fairly stable, and is one from which the particular store draws its trade.

Store managers become familiar with their trade areas. They know at the time the sales activity is being planned and the circulars or like material are being prepared, the geographical area into which distribution will be made.

As a rule, distribution of advertising material is made on or immediately prior to the date when sale prices first become effective. In order to obtain maximum benefit, timing is important. The nearer distribution can be made to coincide with the opening of the sale, the better the results.

Soon after a representative of the defendant obtains physical custody of the advertising material, it is transported to a convenient location, its employees are then instructed as to the area within which distribution is to be made, and at the appointed time, they deliver the circulars or like material from house to house on assigned streets within the designated trade area.

Each work week of their work during the period covered by the complaint, a substantial part of the advertising material distributed by Universal's employees had been procured by it or by the retail establishments for whom such services were performed, from sources outside Oklahoma.

None of the defendant's employees have been compensated at the rate of $1.25 an hour or more. Occasionally some of them have worked hours in excess of 40 within a work week without receiving overtime compensation for such excess hours. In addition, no record has been made of daily or total weekly hours worked.

The question, as stated before, is whether the employees of Universal have been, and are, engaged in commerce within the intendment of the Act at the time they make distribution of the advertising material. The answer to this question depends on whether the material remains in the channels of interstate commerce until delivered to the premises of prospective customers residing in the designated areas.

It is necessary to take into consideration the uncontroverted facts that the procurement, preparation and distribution of the goods involved constitute an inseparable part of Universal's customers' planned and controlled sales promotion activities. If it were permissible to view the physical activities of defendant's employees in complete isolation, much could be said in favor of a contention that the distribution made by them constitutes nothing more than a small local intrastate activity. But to do so, would be contrary to well settled legal principles.

The Act must be given a liberal construction. Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949; Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243; Walling v. Rutherford Food Corporation (10 Cir.), 156 F.2d 513, affirmed in part and modified in part, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772. The question whether an employee is engaged "in commerce" within the meaning of the Fair Labor Standards Act is determined by "practical considerations, not by technical conceptions." Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196.

Section 3(b) of the Act defines "commerce" to include "transportation, transmission, or communication among the several States * * *" This definition makes it clear that the distribution of goods, such as we have here, to the houses of customers or prospective customers of retail stores, residing in a defined area, established and known before the goods commence their interstate journey, is but the last step in that transportation. The "communication" accomplished by the advertising material is made possible only by their carriage across state lines to the destination in the state intended from the beginning.

Defendant contends that the goods come to rest either at its establishment or that of its retail store customers. The criteria for recognizing the "end" of an

interstate journey of goods shipped across state lines was settled by the Supreme Court in the case of Walling v. Jacksonville Paper Company, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460. The precise question decided there was whether goods procured from out of state sources and delivered to the paper company's branch warehouses, where they were unloaded and brought into the warehouses to await distribution to customers within the same state, were still moving in commerce while local delivery was being made. In considering goods intended for specific customers, the Supreme Court recognized that when there is a practical continuity of movement until they reach the customers for whom they are intended, commerce continues and a "temporary pause in their transit does not mean they are no longer 'in commerce' within the meaning of the Act." The Court also held that no "ritual of placing the goods in a warehouse can be allowed to defeat that purpose." "Any other test would allow formalities to conceal the continuous nature of the interstate transit which constitutes commerce."

In Western Union Telegraph Company v. Lenroot, 323 U.S. 490, 65 S.Ct. 335, 89 L.Ed. 414, the Supreme Court, in analyzing the extent of the "commerce" there involved, held that the distribution of telegraph messages to their intended receivers, which originated outside the state, was an activity in the channels of interstate commerce in which the messages moved.

The local distribution of advertising matter by defendant's employees is similar, insofar as interstate commerce is concerned, with the local distribution of newspapers containing news and advertisements transmitted in interstate commerce considered by the Court in Lorain Journal Co. v. United States, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162. In passing upon the interstate characteristics of the local distribution of a newspaper, the Court commented that distribution within a community of news and advertisements transmitted there in interstate commerce for the sole purpose of immediate and profitable reproduction and distribution to the reading public is an "inseparable part of the flow of the interstate commerce involved." There are a number of other decisions which bear upon the issue in the instant case.[1]

[4] The cases relied upon by Universal do not stand for the proposition that the interstate journey of the advertising material ends upon reaching the retail stores. For such transit to end there, the local stores, under the stipulated facts, must be the final destination for which the material was intended. The contrary is true. There is no storage for indeterminate and subsequent sale or distribution. The material is not handled or otherwise processed. It is known by all concerned, the retail enterprises, their out-of-state advertising offices or agencies, and the defendant, that the destination of the circulars and like material are the premises of customers and prospective customers residing in a known and rather well defined trade area.

Defendant's reliance upon Higgins v. Carr Brothers Co., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. 468 is misplaced. That case was decided upon the same date as Walling v. Jacksonville Paper Company, supra. The Supreme Court noted that an effort was made "to show an actual or practical continuity of movement of merchandise" from without the state to regular customers within the state. In this, the petitioner (employee suing for back wages) failed, the Court stating: "But here, unlike Walling vs. Jacksonville Paper Co., there is nothing in the record before us to support those

---

1. Walling v. American Stores Company (3 Cir.) 133 F.2d 840; Mitchell v. Miller Drugs, Inc. (1 Cir.), 255 F.2d 574; Walling v. Mutual Wholesale Food and Supply Co. (8 Cir.), 141 F.2d 331; McComb v. Wyandotte Furniture Co. (8 Cir.), 169 F.2d 766; Mitchell v. C. & P. Shoe Corporation (5 Cir.), 286 F.2d 109, and Wirtz v. C. & P. Shoe Corporation (5 Cir.), 336 F.2d 21.

**546**

statements \* \* \*." In the Higgins case, merchandise was unloaded and stored in a warehouse for subsequent sale and distribution to the local retail trade. In the case at bar, the goods are held at the retail stores for brief periods awaiting the appointed time for pick-up and distribution by defendant's employees. The temporary pause of the advertising material at the retail stores does not terminate its journey in interstate commerce.

An appropriate Judgment will be entered for the plaintiff.