**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**C. T. DAY, Defendant.**

**Civ. A. No. 2210.**

United States District Court
W. D. North Carolina,
Asheville Division.

Sept. 14, 1965.

Charles Donahue, Sol., Beverley R. Worrell, Regional Atty., James H. Woodson, Atty., U. S. Department of Labor, Atlanta, Ga., for plaintiff.

Harold K. Bennett, Asheville, N. C., for defendant.

WARLICK, District Judge.

This action is one instituted by W. Willard Wirtz, Secretary of Labor, of the United States Department of Labor, under the provisions of § 16(c) of the Fair Labor Standards Act of 1938, together with the amendments thereto, 29 U.S.C. § 201 et seq., to recover from defendant, C. T. Day, Sr., unpaid minimum wage and overtime compensation for one of his employees, Robert B. Clark. The case was tried by the court without a jury.

In the complaint plaintiff alleged that Robert B. Clark was employed on December 10, 1961 to and through December 10, 1963, in and about the defendant's warehouses in Asheville, North Carolina, which employment was during the annual tobacco sales period, and that Clark regularly performed, as such employee, the customary services needed in receiving, handling, caring for and storing tobacco processed in said warehouses; that among other things he was paid a rate of less than $1.15 an hour up to and including September 3, 1963, and less than $1.25 thereafter, and demands a recovery in the sum of $2,915.69.

The complaint was filed on March 18, 1964, when summons duly issued.

The defendant among other things in the answer admits that Robert B. Clark was employed by him in and about his tobacco warehouses in Asheville during a part at least of the 1962–1963 regular tobacco seasons and at other times during the periods in question,—and admits further that Clark worked on construction of two new buildings as a common laborer; he denies that Clark worked more than eight hours during any work day and thereupon was not due any overtime compensation; and that the full amount of minimum wage was paid for each hour worked.

Defendant further pleads the statute of limitations contained in the Act, 29 U.S.C. § 255, alleging in his further answer and defense that all causes of action set out in the complaint during the year 1961 and prior to March 18, 1962, are barred by such statute of limitations; and prays that plaintiff take nothing by his action for the use and benefit of the said Robert B. Clark.

Now having considered the pleadings, the testimony of the witnesses, the exhibits, the stipulations as made by the parties, constituting the evidence and the briefs filed by counsel, together with a thorough recent reading of the testimony, the following Findings of Fact and Conclusions of Law are made pursuant to Rule 52 of the Federal Rules of Civil Procedure.

Three issues arise for determination:

1. Whether the work performed by Robert B. Clark as defendant's employee during 1962 and 1963 constituted covered employment under the Act.

2. How many hours each week did Robert B. Clark work as an employee of the defendant during the two year period?

3. Finally, was Robert B. Clark paid wages by the defendant for the work performed in compliance with the minimum wage and overtime provisions of the

Act for all covered employment during the periods involved, and obviously, if not, what amount of back wages is due Robert B. Clark by the defendant?

Defendant, C. T. Day, is a resident of Asheville, Buncombe County, North Carolina, and in the Western District. Prior to 1962 defendant was the owner of eight warehouses, all located in the City of Asheville,—three of which were used during the tobacco sales season for auction sales of tobacco. The remaining five warehouses during the period in controversy were leased to persons, or corporations for storage and various other purposes, all under the terms of written leases,—the defendant in each lease being obligated only to keep the roofs on said buildings in repair.

In 1962 the tobacco sales season opened on November 25, and as is customary the warehouses operated by the defendant began receiving tobacco on November 15, 1962. In 1963 the tobacco season opened on November 26 and the warehouses began receiving tobacco on November 16; it being customary for the warehouses engaged in tobacco sales to receive tobacco over a period of some ten days prior to the actual opening of the season for sales.

From the date the tobacco sales opened it continued without interruption until December 20 of each year, and then would go in recess for the holidays, and would re-open during the first week of January,—these several dates being regulated wholly by the Tobacco Board.

During the period of time from May 4, 1962 to December 13, 1963, the period for which a recovery is sought, the defendant regularly employed Robert B. Clark, who during the tobacco sales season in those two years was mainly if not wholly engaged in performing janitorial services in the tobacco warehouses of the defendant, which were being used for tobacco sales. Actually the defendant employed Robert B. Clark more than twenty years ago and had continually kept work for him over that period. He occasionally repaired tar roofs, mowed the lawn, raked the yard, ran errands and cleaned up. He aided the carpenters and masons and other employees of the defendant in the erection of two warehouses at least.

During the summer and fall of 1962 defendant constructed a warehouse building on premises which he owned in fee, to be later leased to the American Tobacco Company for use by said company in the business of packing and prizing tobacco in hogsheads for shipment, as previously purchased on the Asheville market. This warehouse construction was supervised by the defendant personally, and his son, C. T. Day, Jr., and he employed his own workers in the construction of said building. The defendant has never been engaged in the business of constructing buildings for third parties. On this construction Robert B. Clark was given employment by defendant, and the working hours were from 7:00 in the morning until 3:30 in the afternoon, with a half hour period for lunch, for all workmen on said construction. Clark performed common labor on such job. Approximately 4½ months were required to complete this warehouse,—being finally completed approximately four weeks prior to the tobacco sales season in 1962. Following completion this warehouse has been continuously leased under a written contract by the defendant to the American Tobacco Company, who exercises complete control over its uses, however under the terms of the contract, the defendant has the responsibility of keeping the roof in good repair.

During the summer and fall of 1963 the defendant again constructed another new warehouse on his premises, this being constructed for lease purposes and following its completion was leased to the Dayco Foam Products Company, and since has been continuously under lease to said company. The lessee has complete control over the warehouse building,—the defendant's only responsibility being that of maintaining the roof in good condition.

Robert B. Clark likewise worked on the 1963 construction, doing similar common

labor as performed by him on the warehouse building in 1962.

During the preliminary ten day period prior to the opening of the tobacco sales in said years Robert B. Clark's duties were to clean three rest rooms once a day in the defendant's tobacco warehouses, and otherwise generally performed such manual labor about the premises as was within his capabilities as an employee of the defendant.

The building constructed in 1962 for the American Tobacco Company and later leased to it was a new building and was not constructed or intended as a replacement for an existing building. The American Tobacco Company had maintained a comparable operation in a building owned by a third party and only effected this lease of the warehouse with the defendant for its convenience. Substantial quantities of tobacco prized and packed by the American Tobacco Company in the building leased to it by defendant are regularly used in the making of cigarettes and tobacco products and when made are sold and shipped throughout the United States and foreign countries. The burley tobacco as sold on the two sales days in the warehouse constructed in 1963 and later leased to Dayco was likewise used in the manufacture of cigarettes and tobacco products generally and when sold was shipped throughout the United States and foreign countries. At the same time substantial quantities of tobacco sold in defendant's three sales warehouses have been purchased by tobacco manufacturers generally and are products regularly used in the production of cigarettes for shipment throughout the world.

The 1963 warehouse was leased to the Dayco Foam Products Company for the storage of its goods, which were produced for shipment in Interstate Commerce and approximately 90% of the goods stored in the warehouse have been substantially shipped in Interstate Commerce. However, prior to its lease to the Dayco Company two daily sales of tobacco were conducted in this building.

Robert B. Clark was employed by the defendant at an hourly wage of $1.25. The hours worked by Clark were kept and individually recorded by Charles T. Day, Jr., on a daily basis, along with the other employees of the defendant, who were engaged as such in the construction of the two warehouses being erected in 1962 and 1963, and were given each week to the bookkeeper for the company who paid all employees by check. Charles T. Day, Jr., was Clark's supervisor during the two years involved in this controversy. The said Clark never worked in excess of eight hours per day nor in excess of forty hours a week; was not regular in reporting for work or in staying on the job after beginning work, and was paid for all hours which he actually worked.

I further find as a fact that plaintiff has offered no credible evidence worthy of belief that Clark worked in any specific year any hours in excess of eight hours per day or any hours in excess of forty hours per week while engaged in connection with the tobacco sales in 1962 or 1963, or any structural work that he may have been engaged in as an employee of the defendant, or at any time when he was a covered employee.

The above findings of fact have been made by the court from a continued and consistent study of the evidence offered under the pleadings filed. The parties through their counsel requested that the matter be determined by the court after proposed findings of fact and conclusions of law had been submitted. In the period of time that elapsed from the time of the trial until the proposed Findings and Conclusions had been filed, it is obvious that some of the evidence would have become hazy. Considering that fact, the court ordered that the transcript of the evidence be made available. It was not particularly lengthy and since its receipt the transcript has been very carefully studied by the court.

It is rather difficult to determine from the evidence offered by the plaintiff, that a recovery in any sense could be had for the use and benefit of Robert B. Clark. In his testimony Clark is somewhat

evasive, speaks with little certainty, and lends nothing particularly credible to the evidence that he gives. He seems to have been somewhat confused and I can give but little credence to his evidence. As an illustration, at one stage of the testimony he stated he had worked for the defendant for 37 years.

The evidence of the other two witnesses offered by the plaintiff not only did not corroborate but in a sense disputed plaintiff's evidence in main. Plaintiff testified that his hours of work began at eight o'clock in the morning. One of his witnesses with whom he occasionally rode to work set their leaving Clark's boarding house at fifteen minutes to seven in the morning. Very often Clark indicates that he worked until 6,—7,—8, sometimes 9:00 o'clock or later at night, when naturally everyone else had gone. The woman with whom he roomed and on occasion took his meals, was not very positive in her testimony, and seemed vague and uncertain,—claimed that he sometimes didn't come in until 3:00 o'clock in the morning. So one's mind is surely left in doubt in determining the truth.

On Interrogatories being filed the defendant answered specifically showing the weeks worked, the total hours worked per day, the total hours worked per week, beginning as of May 4, 1962, when the parties admit such working period of Robert B. Clark would apply. This continued down to the time when his services were dispensed with during the week of December 13, 1963.

Incidentally the Answer to Interrogatory No. 4 was offered in evidence at the trial by plaintiff as substantive evidence and not for the purpose of attack, and as such went into the record as a part thereof.

Obviously the burden of proof is upon plaintiff of proving that he performed work and labor for which he was not properly compensated, and frankly but for the answers to the Interrogatories it would be humanly impossible to determine with any degree of certainty what periods of time Clark worked.

The defendant however kept records of the period of time when Clark as well as the others working with him were engaged in performing their duties.

From it all one must conclude that Clark was supposed to begin work at 7:00 o'clock in the morning and that he, like all the others similarly engaged in the construction, worked until 3:30 in the afternoon, with one half hour off for lunch. This seems not to be in dispute in so far as all the other employees are concerned, and certainly no evidence was offered to the effect that any of the others employed in the construction in 1962 or 1963 have made any complaint whatever that any work performed was in excess of the eight hour period in a given day or forty hours work week.

It would seemingly appear unnecessary for the court to decide just where and when during the period of his employment from May 4, 1962 down to and including December 13, 1963 Robert Clark was employed in Interstate Commerce as a covered employee, or whether he was engaged in work of a strictly local nature. Obviously of course there are periods when admittedly he was employed in Interstate Commerce and would come within the meaning and terms of the Act under which this action is instituted. In other periods naturally he was not a covered employee. However I am of the opinion and so hold that at no time during his employment within the period involved in this controversy did Robert B. Clark in any week work in excess of 40 hours or on any day did he work in excess of 8 hours.

Clark, at times, was given to the use of alcohol and frequently on Mondays and occasionally on other days, failed to appear for work; often he would leave at various times of the day and then would return and resume his work.

During the month of November 1962 he failed to work at all. It seems that he attended a political rally given by some of the local candidates in Buncombe

County on the evening prior to the election on the first Tuesday. Evidently at this outdoor political gathering either the food or the whiskey served, or both, was too overpowering and on the next morning Clark was found by some of his friends outside of the area where the gathering had been held and he was found to have contracted pnuemonia. He admitted that he stayed in the hospital for three weeks and four days, and evidently he failed to appear for work at any time during the month of November. The evidence however does disclose that he was given some monies and medicines were purchased for him by the defendant or his son.

I conclude as a matter of law:

■ The defendant while operating his warehouses during the tobacco marketing seasons in 1962 and 1963 was engaged in Interstate Commerce and Clark while working for him during such period as the facts indicate was employed in Interstate Commerce and obviously was a "covered employee" under the Fair Labor Standards Act.

We next come to this question:

■ Are employees of an individual employer who is engaged in erecting a building on his own land, in furtherance of his business, through private labor, and which building is to be leased to a company whose principal business is the manufacturing of a commodity which is destined in whole or in part for shipment in Interstate Commerce, covered by the Fair Labor Standards Act?

Since the enactment of the Fair Labor Standards Law many interpretations have been made by the courts of the United States with respect to those workers who come within the coverage of said Act. Many decisions are to be found,—some applicable and controlling, others directive, and some suggestive. Chief Judge Craven dealt with a somewhat analogous situation in a recent case, and there assembled many of the existing decisions and correlated their meaning in a well developed decision. Goldberg v. Barger Construction Co., D.C., 210 F.Supp. 752 (1962). Our difference is factual.

The United States Supreme Court in the Zachry case, which is the latest and evidently its most important decision, on coverage of employees in construction work, qualified the rejection of the new construction doctrine as follows: "The distinction between maintenance and repair on the one hand, and replacement or new construction on the other, may often be difficult to delineate but is a practical distinction to which law must not be indifferent. Its revelance here, where our purpose must be to isolate primarily local activities from the flow of commerce to which they invariably relate, lies in the close relation of maintenance and repair to operation, as opposed to replacement or new construction which is a separate undertaking necessarily prior to operation and therefore more remote from the end result of the process." Mitchell v. H. B. Zachry Co., 362 U.S. 310, 319, 80 S.Ct. 739, 745, 4 L.Ed.2d 753 (1960).

I am thus of the opinion that those employed by the defendant in the construction of the 1962 and 1963 warehouses were not covered employees; and that accordingly, Clark, for such labor performed, would not be entitled to recover as a covered employee. Further my opinion is that the construction of these two new buildings by the defendant for purposes of rental was strictly of a local nature, in that each was original, each was new and each was not the extension, enlargement, replacement, or maintenance of an existing facility in Interstate Commerce.

Plaintiff is not entitled to recover for the use and benefit of Clark as the action would demand.

Counsel will submit decree.